L. A. ANDREW, Superintendent of Banking, Plaintiff, v. AMERICAN SAVINGS BANK of Carroll, Defendant.

RECEIVER OF AMERICAN SAVINGS BANK of Carroll, Appellee, v. CARROLL COUNTRY CLUB of Carroll, Appellant.

No. 42434.

June 23, 1934.

Helmer & Minnich and Kline & Neu, for appellant.

L. H. Salinger, for appellee.

KINTZINGER, J.—The Carroll Country Club was a corporation for pecuniary profit. In 1923 it owned 40 acres of land subject to a first mortgage of $6,000. At that time it desired to improve the grounds by the construction of buildings and otherwise. For the purpose of raising funds therefor, it issued and sold bonds in the sum of $13,300 in various denominations, all of which were secured by a second mortgage upon its real estate; the mortgage being executed to the American Savings Bank as trustee for all of the bondholders. Among other things, the mortgage provided:

"And it is hereby agreed that this mortgage is given for the equal benefit and security of all such persons, firms or corporations, as shall from time to time be or become the holder of any of the aforementioned bonds, without preference to any bond."

The bonds did not mature until 1932. The interest on all of the bonds had been fully paid until November, 1931, and none of the bonds were in default until after that time.

About the year 1924, the American Savings Bank became the owner and holder of about $1,200 worth of such bonds, which had been originally issued to other parties.

In September, 1931, the American Savings Bank became insolvent and went into the hands of L. A. Andrew as receiver thereof. At the time the bank closed, the Country Club had on deposit in said bank the sum of $1,863.99.

At that time it also had a "Bond Interest" account in which there was a balance of $108. No question is raised as to this account, but it is mentioned only because of the Country Club's claim that the deposit account of $1,863.99 was a special deposit made for the purpose of meeting bond interest payments as they became due.

In 1930, and before the bonds matured, the directors of the Country Club discussed the question of meeting payment on the bonds when they matured, and "agreed among themselves that they were to pay the interest on the bonds as they matured, and (they) were to try and build up the funds so that at the maturity of the bonds (they) would have something to pay each of the bondholders, and then enter into some arrangement for refunding the bonds." The president of the Country Club testified that he instructed the secretary prior to the maturity of the interest dates to deposit the amount of money required to pay the interest on the bonds with the treasurer of the club. "This was made up by checks drawn by the secretary on the general account." In carrying out these instructions, the secretary checked out of the general account various interest installments, which were placed in the "bond interest" account. The evidence also shows that out of its general deposit account, in which there was a balance of $1,863.99, numerous checks were drawn by the Country Club to meet various expenses of the club. It was also agreed in the evidence "that the Carroll Country Club had on deposit therein, in an open account, the sum of $1,863.99."

On December 4, 1931, after his appointment, the receiver filed a report on "classification, correction, allowance and rejection of claims, preferences and offsets." In this report he allowed a depositor's claim in favor of the Country Club in the sum of $1,863.99, but made no offset, and asked for no authority to offset the $1,200 Country Club bonds against the Country Club deposit. This report was approved by the court in December, 1931. In May, 1932, the receiver filed an application for leave to amend his former report alleging that he had inadvertently neglected to offset the Country Club bonds held by the bank against the $1,863.99 deposit account of the Country Club, and asked permission to amend his schedule so as to show an offset of $1,272 against the bank's general deposit

account; so as to show a balance of $591.99 therein instead of $1,863.99. The evidence also shows that the indebtedness of the Country Club was over $19,000, and that its property was not worth over $10,000. The court entered an order authorizing the offset as applied for. From this order the Country Club appeals.

I. From the facts hereinabove disclosed, it is apparent that the amount of $1,863.99 in the deposit account of the American Savings Bank was a general deposit account, and it is our conclusion, from a consideration of the evidence on that subject, that it can be given no other standing or classification. Such a classification was given to that account in his report by the receiver and approved as such by the court. There is nothing in the evidence to warrant a finding that the deposit was special or made for a special purpose. The evidence clearly shows that it was a general deposit. Such was the ruling of the lower court, and we find no error therein.

II. It was also contended that the court's approval of the receiver's first report and classification constituted an adjudication as to the amount and status of the Country Club's claim, and that the same cannot be reduced by permitting the offset referred to. It is our conclusion that the court's order approving the receiver's first report on classifications is not such an adjudication as would prevent the offset in question. The receiver's failure to claim the offset in his first report was fully explained in his application alleging that he inadvertently failed to claim an offset, under the mistaken idea that it could not be done at that time because the bonds were not then in default. There was no issue raised in the receiver's first report on classification, with reference to his rights to offset the bonds against the Country Club's general deposit. That question was not raised or referred to therein. Consequently there could have been no adjudication thereon. In any event it was within the court's discretion to permit the offset after the approval of the first report. Spooner v. Blair, 209 Iowa 1113, 229 N. W. 826, 67 A. L. R. 1366.

III. It is contended that because the bank could not lawfully invest its funds in such bonds it should not be permitted to apply them as an offset to the club's deposit.

The mere fact that the bank was not authorized to purchase the bonds in question would not be sufficient to prevent it from recovering thereon. Benton County Savings Bank v. Boddicker, 105 Iowa 548, 75 N. W. 632, 45 L. R. A. 321, 67 Am. St. Rep. 310; Mills County Nat. Bank v. Perry, 72 Iowa 15, 33 N. W. 341, 2 Am. St.

Rep. 228; Pangborn v. Westlake, 36 Iowa 546; Union Gold Mining Co. v. Rocky Mountain Nat. Bank, 96 U. S. 640, 24 L. Ed. 648.

IV. It is also contended that because the bank was holding the mortgage in question in trust for all the bondholders that it could not lawfully offset them against the Country Club's deposit account. The bank was not holding the funds in the club's general deposit account as trustee for the bondholders at all. The only property held by the bank in trust for the bondholders was the mortgage.

It is true the bank was a trustee, but only of an inactive trust consisting only of holding the mortgage covering the real estate therein described. While it had possession of the mortgage, it did not have possession of the property. The property remained in the possession of the Country Club, and no duties could have been imposed upon the trustee until after default of the bonds. No such default occurred before the bank closed. Until that time all of the property including the deposits in the bank were the property of the Country Club, and the funds on deposit were not embraced within the terms of the trust.

An offset may be made against any property held by the bank not embraced in the trust. Thomas v. Exchange Bank, 99 Iowa 202, 68 N. W. 780, 35 L. R. A. 379; Iowa Title & Loan Co. v. Clark Bros., 213 Iowa 876, 237 N. W. 336; Iowa Title & Loan Co. v. Clark, 215 Iowa 936, 247 N. W. 211; Bank of Commerce & Trust Co. v. Hood (C. C. A.) 65 F. (2d) 281; Commonwealth v. Susq. & D. R. R. Co., 122 Pa. 306, 15 A. 448, 1 L. R. A. 225. In the latter case the clause in the mortgage also provided for an equality of the liens of the several notes secured by the mortgage. If the Country Club's general deposit in the bank had been embraced in the trust, then plaintiff's contention would be good.

It is the settled law of this state that a bank has a possessory lien against a depositor's general deposit account in the bank for any indebtedness owing the bank by the depositor. Thomas et al. v. Exchange Bank, 99 Iowa 202, 68 N. W. 780, 35 L. R. A. 379; Brown v. Sheldon State Bank, 139 Iowa 83, 117 N. W. 289; Wikel v. Garrison, 82 Iowa 453, 48 N. W. 803; Van Wagoner v. Gaslight Co., 23 N. J. Law 294.

In Brown v. Sheldon State Bank, supra, loc. cit. 89, we quote with approval the following language from Van Wagoner v. Gaslight Co., 23 N. J. Law 294:

494

"In cases of cross-indebtedness the assets of the bank consist only of the balance of the accounts. That is all the fund which the bank itself would have had to satisfy its creditors in case no receiver had been appointed. And there is no equality, and no equity, in putting a debtor of the bank, who has a just and legal set-off as against the corporation, in a worse position, and the creditors in a better position, by the failure of the bank and the appointment of a receiver."

The converse is likewise true, and the bank is indebted to the Country Club for the difference between the Country Club's general deposit account, and the amount owing the bank by the Country Club on the bonds held by the bank. It is fair to assume from the evidence that the Country Club was also hopelessly insolvent at the time the bank closed, because of the great decline in real estate values. For this reason the receiver, standing in place of the bank, was also entitled to the offset claimed.

By permitting the offset, the Country Club secures the advantage of recovering 100 per cent of its deposit up to the amount of the bonds. Ordinarily the offset is demanded by the depositor. In this case the security of the other bondholders is enhanced, rather than diminished, because the same property secures a reduced indebtedness. The bonds held by the bank constituted an indebtedness of the Country Club. This part of the club's indebtedness was necessarily fully extinguished by the offset of the amount due thereon from the general deposit in the bank. We are unable to see how the club could have been prejudiced in the slightest degree by authorizing the offset. No one else appeals.

The foregoing disposes substantially of all the errors complained of in this action. We believe the ruling of the lower court was right, and for the reasons hereinabove set out the order and decree of that court is hereby affirmed.

All Justices concur.