## LOWDEN et al. v. IOWA–DES MOINES NAT. BANK & TRUST CO.
### No. 883.

District Court, S. D. Iowa, Central Division.
Feb. 7, 1935.

Gamble, Read & Howland, of Des Moines, Iowa, for plaintiffs.

James B. Weaver, of Des Moines, Iowa, and Breese & Cornwell, of Mason City, Iowa, for defendant.

DEWEY, District Judge.

The above-entitled cause came on for hearing in open court at Des Moines, Iowa, on the 21st day of December, 1934. Certain stipulations of fact were introduced in evidence as Exhibit 1, and an amended stipulation of fact was introduced in evidence as Exhibit 2. These stipulations are lengthy and need not here be set out. Certain oral evidence was also introduced. The case was argued and submitted upon its merits, with permission to the parties to file written briefs, which has been done.

The plaintiffs in their brief succinctly set out the substantial questions involved, as follows:

"1. Assuming that defendant had a legal right on June 7, 1933, to set off the deposit of the Railway Company against mortgage secured bonds of the Railway Company owned by the Bank, did defendant waive or relinquish such right of set-off by honoring and paying checks in excess of the amount on deposit at the close of business on June 7, 1933, before attempting to exercise the right of set-off?

"2. Does Section 68 of the original Bankruptcy Act apply to bonds of the Railway Company in proceedings had under section 77 so as to authorize the holder of such bonds to set off the par value thereof against debts due to the Railway Company?

"3. Is the mere fact of filing and approval of a Petition by a railroad corporation under Section 77 proof of insolvency of such corporation so as to authorize the holder of an unmatured bond of the railway company to set off the par value thereof against sums due to the railway company?

"4. If under the circumstances hereinbefore referred to, a right of set-off exists, are bank deposits owing to a railway company, and mortgage secured bonds 'mutual debts' or 'mutual credits' so as to enable them to be set off?

"5. Can an individual holder of bonds issued pursuant to the terms of a mortgage or trust deed by which the right to declare the bonds due in the event of default is vested exclusively in trustees, use such bonds as a set-off against debts due to the signer of the bond in advance of any action by the trustees of the bond issue accelerating the maturity thereof?"

The answer to these questions determines the rights of the parties within the issues raised by the pleadings, and I will discuss them in their reverse order.

■ Question 5. This question appears to be answered by the terms of the mortgage or trust deed, Exhibit J, wherein the rights of bondholders are defined as follows: "Sec. 20. Except as herein expressly provided to the contrary, no remedy herein conferred upon or reserved to the Trustees or to the holders of first and refunding mortgage bonds is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute."

There being no express provision in the mortgage or trust deed contra to an offset, this provision clearly preserves that remedy to a bondholder.

■ Question 4. I have examined the exhaustive briefs of the parties on this question and am satisfied that there was a mutuality of debts and credits that gave to the bank the right of a set-off between the railway company's checking account and the bonds of the railway company in the possession of the bank.

■ Question 3. While the mere fact of the filing and approval of a petition by the railway company under section 77 of the Bankruptcy Act [11 USCA § 205] may not .

in and of itself be sufficient proof of insolvency, I am convinced that the statements contained in that petition together with the general economic condition of the entire country and of the western railway companies, of which the court can take judicial notice, are sufficient to warrant an inference and finding that the Chicago, Rock Island & Pacific Railway Company was insolvent, both as to a situation where it was unable to meet its debts as they matured, and the value of the property of the defendant on that date at a fair valuation was not equal to its indebtedness.

■ Question 2. The plaintiffs here strenuously insist, as they do in their other contentions, that section 68 of the original Bankruptcy Act [11 USCA § 108] or the right of set-off, does not apply to bonds of a railway company in proceedings had under section 77 [11 USCA § 205]. The legislation being so recent, there are no authorities to guide the court in the answer to this question, but after carefully considering the argument of the plaintiffs, I am satisfied that the right of set-off is one of the incidents of reorganization which is not inconsistent with the proceedings contemplated under section 77 of the Bankruptcy Act. Section 77 expressly provides that provisions of the general Bankruptcy Act which are consistent with the provisions of section 77 shall control the rights and liabilities of the creditors; and section 68 of the Bankruptcy Act expressly permits set-offs and counterclaims. In the absence of any provision in section 77 limiting this right of set-off, I can see no reason why creditors are not entitled to the same rights with respect to set-off of mutual debts and credits as they would have had the railway company invoked the general bankruptcy laws.

Question 1. This question is the most difficult to answer, and of the greatest importance in a proper decision of this case.

On June 7, 1933, the date of the filing of the petition under section 77 in Chicago, the railway company had a balance in its favor in the general checking account of the defendant in an amount of $38,881.82. Notice of the filing of the petition under section 77 and the adjudication in Chicago on that date came to the defendant bank on June 9, 1933, and a notation was made on the individual checking account ledger sheet of the railway company, as follows: "In bankruptcy as of June 7, 1933." The account, however, was continued and no record made in the account of the railway

company, as shown by the ledger sheets, other than this notation. On June 10, 1933, this account had been built up by deposits made by employees of the railway company until it aggregated, on that date, $68,496.88.

On June 9, 1933, a check for $50,000, payable to the Continental Illinois National Bank & Trust Company of Chicago, was duly drawn on this account and received by the defendant on June 10, 1933. This check was honored, paid, and debited against the account of the railway company in the bank; the credit balance being reduced, as shown by the checking account ledger sheets, to the sum of $18,653.15. On June 15, 1933, another check for $50,000 was honored and paid by the bank; the checking account having been built up to that date in the amount of $72,284.03.

This raises the question whether the payment of the check of $50,000 on June 10, 1933, was a release, relinquishment, and payment of the balance on hand of June 7, 1933, in the amount of $38,881.82, or was it a release, relinquishment, and payment of the sums that had been deposited by the railway company since that date, and that part of the $38,881.82 only which exceeded the balance of $18,496.68.

■ Plaintiffs contend that the rule of "first in, first out" should apply, and that this check was a relinquishment, payment, and discharge of any amounts on deposit on June 7, 1933. The general rule is set out in 48 Corpus Juris, p. 657, par. 111, cited by the plaintiffs, as follows: "Items of Current Account. Subject to some limitations the general rule is that, in the case of a running account, where there are various items of debt on one side and various items of credit on the other occurring at different times, and no special appropriation of payments has been made by either party, the successive payments are to be applied in discharge of the items of debit antecedently due, in the order of time in which they stand in the account. In other words, each item of payment is applied in extinguishment of the earliest items of debt until the payment is exhausted. But application will not be made to items, the validity of which is in dispute. The rule applying a payment to the oldest items may be confirmed in a particular case by evidence of the intention of the parties, but the rule holds, even though the parties are ignorant of it."

■ If the intention of the parties appears otherwise, however, as where there is an

express understanding between the parties to that effect, or where there is a course of dealings between the parties indicating what their intention was, the court will apply the payment in accordance with that intention. I am satisfied that this rule should apply to the present situation and the cashing of the $50,000 check was a payment and release of the amount of the balance in the checking account on June 7, 1933, unless the contentions of the defendant are sound.

The defendant claims that it had a possessory lien against the general deposit account of the railway company in the amount shown by the books of the bank on June 7, 1933, and that, having such a lien, the presumption would prevail that the bank intended, when it cashed the $50,000 check, not to make payment from any sums upon which it had a lien, but from subsequent deposits. Also, that the evidence establishes that it was the intention of the parties that the amount on deposit on June 7, 1933, should be held as a trust fund by the bank to be used as an offset against any indebtedness due it from the railway company.

I do not think the facts so establish. It is true that the bank recognized a differentiation between the accounts, and that it must have taken cognizance of the rule of law that, when the railway company filed its petition in bankruptcy, the amount on deposit in its bank passed into the hands of the trustee subject to any rights that it had to an offset, and that a new relationship would exist after that date, as future deposits would be made by a separate entry, to wit, to the credit of the trustees. However, under the law, both the amount in the checking account on June 7, 1933, and future deposits became and were the property of the trustees in bankruptcy, or at least they had the right of possession thereof. I can see nothing therefore in this situation which would indicate any separation of the money on deposit or any rights therein other than the right to make the offset which the bank had on June 7, 1933, of the money on deposit at that time for the bonds held by it executed by the railway company.

It is true that some of the courts speak of the right of a bank to retain possession of money on deposit with it in the event of insolvency and to apply it on an indebtedness due it by the depositor as a "lien." Probably as strong a statement of this kind as is found is in the decision of the Supreme Court of the state of Iowa in a recent case, as follows: "It is the settled law of this state that a bank has a possessory lien against a depositor's general deposit account in the bank for any indebtedness owing the bank by the depositor." Andrew v. American Savings Bank, 255 N. W. 871, 873.

■ However, this cannot be taken in any view as a lien similar to that of a vendor's lien or an agister's lien; but, if it is a lien at all, it is what the words indicate, a "possessory lien," which means only that the bank had a right to hold and retain possession of the deposit for the application of a proper set-off. From an examination of the cases, I am satisfied that the general rule as set out in 7 Corpus Juris, p. 653, par. 351, is correct, as follows: "As a general rule a bank may look to deposits in its hands for the repayment of any indebtedness to it on the part of the depositor and may apply the debtor's deposits on his debts to the bank as they become due. While the universal recognition of this rule has led the courts, on a few occasions, to make a general statement to the effect that a bank has a lien on deposits, the more accurate view appears to be that this right of a bank is not really in the nature of a lien but is rather a right of set-off or application of payments. The exercise of the right is optional with the bank."

■ It seems to me then that the position of the defendant that it had a lien, which would make a difference in the rule with reference to "first in, first out," is not supported by good reasoning or authority, and constitutes no defense. But if we should give to the transaction that view claimed for it by the defendant, a right to the bank of a possessory lien, still I am unable to reason why the cashing of the $50,000 check did not pay, extinguish, and discharge the amount on deposit on June 7, 1933. A possessory lien certainly means a right to hold the deposit and certainly it can make no difference as to whether the bank had such a right of possession or not, if it voluntarily released that right by paying out and letting the money go out of its hands.

The evidence discloses and the bank seriously claims that none of the officers of the bank had any knowledge of a right of offset against the checking account of the railway bonds until June 19, 1933. If it had no knowledge, how can it be said that it did not intend to pay out, when it cashed the $50,000 check, the amount on deposit as of June 7, 1933? If there was anything in the evidence that would indicate an intention otherwise, it would make a different

434

result; but it seems to me that if there is any evidence that would indicate an intention of the bank, it would be that as claimed by the plaintiffs, for, when one of these $50,000 checks came into its hands, it hesitated a long time before making payment. It seemed that payment on one check had been stopped, no doubt because it had been issued by the old company and bankruptcy had intervened before it was presented for payment. But the bank officials were very careful to make inquiry as to whether or not they should cash the $50,000 check and, after investigation and careful inquiry, they were satisfied that it was right and proper for them to do so. They must have had in mind a right to pay out the money that was on deposit prior to the bankruptcy, as well as the question whether they had a right to pay out on a check the money that was subsequently deposited. I can find nothing in the evidence that indicates any intention otherwise than a voluntary payment, and I can see no reason why the rule of "first in, first out" does not apply in this case.

The defendant claims that section 77 of the Bankruptcy Act is unconstitutional. I indicated in a former ruling in this case that so far as this court was concerned that position was untenable, and I so find here, to which the defendant excepts.

The parties have filed with this court motions and requests for findings of fact and conclusions of law and ask that exceptions to rulings thereon be carefully preserved.

This is an action at law; the parties having agreed in open court that the case may be heard by the judge without the interposition of a jury.

On plaintiffs' request for findings of fact, I find that requested findings Nos. 1, 2, 3, 4, 5, 6, 7, 8, and 9 should be, and the same are hereby, sustained and adopted as findings of fact by this court, and the defendant excepts.

The conclusions requested by the plaintiffs in A and B are sustained and adopted as conclusions of law by this court, and the defendant excepts. Conclusions of law requested by plaintiffs in C. D. E. and F are overruled, and the plaintiffs except.

I further find, as requested by the plaintiffs, that, under the evidence and record in this case, plaintiffs are entitled to judgment in the sum of $28,219.33, with 6 per cent. interest from June 19, 1933, and defendant excepts.

As to defendant's motion and request for findings of fact and conclusions of law, the same are each and all severally overruled, and defendant excepts.

The clerk will therefore enter the following order: The above-entitled cause came on for hearing in open court at Des Moines, Iowa, on its merits on the 21st day of December, 1934, and was argued and submitted, and, being advised, the court finds for the plaintiffs as against the defendant, and fixes the amount of their recovery in the sum of $28,219.33, with 6 per cent. interest from the 19th day of June, 1933. Exception allowed defendant.