### In re BROCKTON SHOE MFG. CO., Inc.
#### No. 53603.

District Court, D. Massachusetts.
Nov. 21, 1934.

Lee M. Friedman, of Boston, Mass., for trustee in bankruptcy.

John R. Wheatley, of Brockton, Mass., for Brockton Nat. Bank.

McLELLAN, District Judge.

The question here presented is whether a bank, which had originally the right to apply the amount of a deposit on the depositor's debt, lost it in consequence of the doctrine of waiver, estoppel, or election.

The facts, taken from the referee's admirable memorandum of decision and certificate, presented in a somewhat different order than there stated, are substantially and chronologically as follows:

In April, 1932, one Lee brought suit in the state court against the Brockton Shoe Manufacturing Company, Inc., the now bankrupt, and named the Brockton National Bank as defendant trustee. The bank answered "funds" to the extent of $9,215. At this time, the shoe company was indebted to the bank in the sum of $20,000 on notes which had then matured or which, upon subsequent renewal, matured prior to bankruptcy. Thereafter, pursuant to an agreement between the parties, the bank released to the shoe company all funds in excess of $5,015.

On June 30, 1933, an involuntary petition in bankruptcy was filed against the shoe company, followed by an adjudication on July

25, 1933.. The bank filed a proof of claim in the amount of $15,295.17 as an unsecured general creditor, which claim was allowed without contest on August 29, 1933. This proof of claim was in ordinary form and was accompanied by a copy of the note of the bankrupt, dated March 22, 1933, payable May 4, 1933, in the original principal amount of $20,000, on which there was then owing on account of principal and interest $15,295.17. The proof of claim stated that there were no set-offs or counterclaims. The bank participated to the full amount of its claim in the election of the trustee, whose election, according to the referee's finding, was assured even without the bank's vote. In December, 1933, a dividend of 25 per cent. was paid, and the bank received and collected $3,823.79, or 25 per cent. of the full amount of its proved claim. Thereafter, the trustee in bankruptcy incurred expenses for counsel fees and for the preparation of the Lee case for trial. It is fairly inferable from the referee's findings that a portion at least of this expense was incurred after the expiration of a year and thirty days from the date of adjudication, and that it would not have been incurred save for the purpose of saving the $5,015.50 fund for the benefit of general creditors. It is reasonably obvious that, the time for Lee's proof of claim having expired, the trustee in bankruptcy would not have incurred the cost of preparation at the expense of the estate if the only result would be to preserve the fund for the bank. Like considerations apply to the ensuing settlement. The amount of $5,015.50 remained in the bank until April 22, 1934, when, on the eve of trial, Lee's action was settled by the trustee on payment of $1,250 from funds of the bankrupt's estate other than those under attachment. The settlement was made after due notice to all creditors, including the bank. The settlement, which was approved by this court, took the form of a judgment for the plaintiff for $1,250 without costs and an entry of "judgment satisfied." As a part of the settlement the plaintiff discharged the bank as defendant trustee.

The referee, in the course of his arrival at the conclusion that the bank should be allowed to amend its proof of claim so as to get the benefit of a set-off, said: " * * * But if the Bank restores the proper amount of the dividend received and reimburses the trustee for any expenses incurred by him in reliance upon its apparent waiver of the set-off, then there seems no reason to deny the amendment. In this respect the action of the Bank did tend to mislead the trustee, because if the Bank, in its proof, had alleged that it held $5,015.50 on deposit which it claimed as a set-off then the trustee in paying the judgment of the said Bernard F. Lee would not have used funds of the estate but would have directed that execution be levied on the funds held under attachment. In this way the bankrupt estate would have benefited as the State Court attachment lien was superior to the Bank's right of set-off. But this objection is not fatal because the Bank, as a condition to the allowance of the proposed amendment, can restore to the bankrupt estate the $1,250 which the trustee in reliance upon the Bank's action paid on the Bernard F. Lee judgment. * * *" It is noteworthy that the referee makes no provision for the bank's paying the trustee in bankruptcy the expenses incurred in connection with the preparation of the case for trial. Moreover, the bank received as a general creditor by way of dividend substantially $1,250 more than it would have been entitled to receive had its original proof of claim been reduced by the amount of the deposit, and the referee makes no provision for the return of such excess.

After the settlement of the Lee case, the trustee in bankruptcy made immediate demand on the bank for the funds on which the attachment was released. The bank refused the demand, claiming a right of set-off.

On May 28, 1934, the trustee filed a petition, praying that the bank be ordered to turn over to him these funds. The referee's decision makes it clear that no question as to his jurisdiction to determine the matter is involved. On July 9, 1934, after hearing the parties, the referee entered an order, as follows: "The petition of the trustee is allowed to the extent of $1250, and the Bank may file an amended proof of claim in accordance with this opinion."

The question presented is whether the referee's order, set forth above, was correct.

No cases need be cited for the proposition, conceded by both parties to this proceeding, that, at the time of the attachment by trustee process, the bank had the absolute right to answer "no funds" and to set off the money in its hands on account of the indebtedness due it. This right to apply the amount of the deposit to the depositor's indebtedness endured until it was exercised or lost.

The bank's conduct, reasonably interpreted, was of such a character as to lead the trustee in bankruptcy to believe that the bank did not intend to exercise its rights of set-off. When the bank, having the right to answer "no funds," answered the contrary

and retained the full amount of the notes still outstanding until the adjudication in bankruptcy; later filed its claim on an original note of the bankrupt with no deduction of any part of the deposit, and in the proof of claim stated there were no set-offs or counterclaims; voted and received a dividend on the face amount of its proved claim; and, on being notified of the proposed settlement of the Lee case, said and did nothing—it took a position from which it ought not to be permitted to recede, where the trustee in bankruptcy acted upon such a course of conduct to his detriment. If one were to consider simply the fact that the trustee paid $1,250 in settlement of the Lee case, in connection with the referee's finding in substance that this was done in reliance on the bank's conduct, I should doubt very much whether the estoppel, waiver, or election thereby created could be destroyed by the bank's tender of the amount thus paid to a third person. No authority has been brought to my attention by counsel, and I have seen none, to the effect that a person, once estopped, may thereafter take a position inconsistent with his original attitude, if his adversary is paid for the detriment suffered in reliance upon the former's conduct.

But the trustee's right to prevail in this proceeding does not rest solely upon a determination of this question. The referee's order provides only for the payment of $1,250 and comes far short of providing for complete restitution to the trustee for the loss incident to his reliance upon what the bank did. The trustee paid the bank approximately $1,250 on its claim as a general creditor to which it was not entitled if it is permitted now to amend its proof of claim and avail itself of a set-off. Moreover, the expenses of preparing the Lee case for trial resulted directly from the situation created by the bank, and the referee's order contains no provision for their repayment.

Under the circumstances disclosed by this record, it would be inequitable to permit the bank to avail itself of a set-off, where its conduct indicated so clearly that it did not intend to do so, and where the trustee acted on the bank's representations as here indicated. The fact that the bank was advised by counsel that its right of set-off was subordinate to the attachment lien, and that because of this it failed to refer to the deposit as available for set-off, warrants no different conclusion. The unquestioned good faith of the bank in connection with its proof of claim, and the fact that it did not intend

thereby to waive its right of set-off, seem to me of no very great importance, where the effect of its long-continued course of procedure was to lead another to believe that any right of set-off had been abandoned.

The bank having waived its right to have this matter determined in a plenary proceeding, I think the trustee's petition for a turnover order, so-called, should have been granted. The order of the referee allowing the trustee's petition only to the extent of $1,250, and giving leave to the bank to file an amended proof of claim, is vacated, and an order in accordance with this opinion is to be entered.