

John Bennett King, of San Francisco, Cal., for appellant.

Frank J. Hennessy, U. S. Atty., R. B. McMillan and A. J. Zirpoli, Asst. U. S. Attys., all of San Francisco, Cal., for appellee.

Before WILBUR, DENMAN, and MATHEWS, Circuit Judges.

PER CURIAM.

The Warden petitions for a rehearing on the ground that we have not followed the holding of the Circuit Court of Appeals in McDonald v. Hudspeth, 10 Cir., 129 F.2d 196, decided June 17, 1942, wherein the court considered three counts of an indictment under 12 U.S.C.A. § 588 b(b). In that case a different individual was named in each count as the one whose life was imperiled by the use of a dangerous weapon. It does not appear that the question was involved in the decision of the habeas corpus proceeding because in any event the term had not yet expired. Consequently the question as to whether there could have been a sentence of 25 years on each count was not open to the petitioner and was not properly before the court. The sentence for 25 years was clearly justified in that case on one count, and the sentence, if excessive, was void only as to the excess. Holiday v. Johnston, 313 U.S. 342, 550, 61 S.Ct. 1015, 85 L.Ed. 1392. The statement of the court that each count charged a separate offense was not within the issues properly raised by the petitioner in that case and the statement was, therefore, dictum. However that may be, the question was properly before us and we adhere to our view that the crime alleged is one of robbery with a deadly weapon. If the lives of a dozen persons were imperiled the fact that the draftsman chose to name each individual in a separate count rather than to include them all in one count, as was done in Hewitt v. United States, 8 Cir., 110 F.2d 1, 6, did not constitute each count a separate and distinct bank robbery, although, if the offense charged had been that of an assault upon the individual, it would do so.

Petition denied.

Thomas E. Weaver, of Catasauqua, Pa., for appellant.

David Getz, of Allentown, Pa. (A. M. Lucks, of Scranton, Pa., on the brief), for appellee.

Before MARIS and GOODRICH, Circuit Judges, and SMITH, District Judge.

GOODRICH, Circuit Judge.

On September 2, 1941, the Mauch Chunk Brewing Company filed a petition for reor-

ganization under Chapter 10 of the Bankruptcy Act.[1] It then had on deposit in the Lehigh National Bank of Catasauqua, Pennsylvania, the appellant, $777.07. On September 4, 1941, P. J. Cummings who had been appointed trustee of the debtor's estate, deposited additional sums raising the total to $1201.86. At the same time he informed the cashier of the bank of the reorganization proceedings and that he wished to have the account transferred to his name as trustee for the debtor. At the cashier's direction, a check was drawn by the trustee, for the total sum on deposit, to the order of "Mauch Chunk Brewing Company, P. J. Cummings, Trustee" and delivered, unindorsed, to the teller who issued a deposit slip and book, showing credit for the full amount of the check, in the name of P. J. Cummings, Trustee for Mauch Chunk Brewing Company. On September 6, 1941 a check for $1201.86, drawn by the trustee to his order was presented for payment to the bank which refused to honor it and answered "Not sufficient funds on account of set off against indebtedness of Mauch Chunk Brewing Company". This consisted of four notes of the debtor which were not due until the latter part of September and October of 1941. The trustee thereupon filed a petition for a turnover order which was resisted by the bank, on the ground that the matter of the bank's set-off could not be adjudicated summarily.[2] The referee granted the trustee's petition and the District Court affirmed the order.[3] This appeal followed.

The appellant does not dispute the given facts. Nor does it deny that if its conduct has lost it the claim of set-off, the court had the requisite jurisdiction to issue the turnover order. This being a proceeding under Chapter 10 of the Bankruptcy Act and there being no allegation or proof of the debtor's insolvency, it is questionable whether the bank could set off the debtor's unmatured obligation against its deposit.[4] However, that question need not be determined at present, for we believe that the bank lost whatever claim of set-off it may have had.

Section 68 of the Bankruptcy Act allows a creditor to set off, if certain conditions of that section are met, mutual debts existing between him and the debtor.[5] This is a privilege which the creditor may or may not claim. If it is not asserted, it is lost.[6] Likewise if the creditor's conduct is inconsistent with a subsequent claim of set-off, he is held to have waived it. Thus, as between a bank and a bankrupt depositor, the former has been held to have lost its claim of set-off where, failing to claim it, it entered into an assignment for the benefit of creditors and changed the name of the account to that of the creditor's committee,[7] where it transferred the bankrupt's account to his executrix prior to bankruptcy,[8] and where it did not assert its set-off in an attachment proceeding nor in the subsequent bankruptcy proceedings when it filed its proof of claim.[9] The same result obtained when a bank, after reorganization proceedings had been instituted, honored the debtor railroad's checks and accepted its deposits, the court applying the "first in-first out" rule.[10]

In each of these cases the action of the creditor was considered tantamount to a renunciation of its privilege of set-off. The conduct in each instance amounted to a representation to other creditors and trustees that it did not choose to apply the funds on deposit with it to the debtor's obligations. Having thus apparently surrendered its claim of set-off, it could not

---

[1] 11 U.S.C.A. § 501 et seq.

[2] By stipulation, $424.79, the sum deposited by the trustee after the initiation of the reorganization proceeding, was turned over by the bank to trustee without prejudice as to the balance of the funds.

[3] D.C.M.D.Pa.1942, 43 F.Supp. 205.

[4] See Finletter, The Law of Bankruptcy Reorganization (1939) p. 303 et seq.; Lowden v. Northwestern National Bank & Trust Co., 1936, 298 U.S. 160, 56 S. Ct. 696, 80 L.Ed. 1114, and the same case upon remand to the Circuit Court, 8 Cir., 1936, 84 F.2d 847, certiorari denied, 1936, 299 U.S. 583, 57 S.Ct. 109, 81 L.Ed. 430.

[5] 11 U.S.C.A. § 108.

[6] Cumberland Glass Manufacturing Company v. DeWitt and Company, 1915, 237 U.S. 447, 35 S.Ct. 636, 59 L.Ed. 1042.

[7] May v. Henderson, 1925, 268 U.S. 111, 118, 45 S.Ct. 456, 69 L.Ed. 870; First Nat. Bank of Waco v. Sheehy, 5 Cir., 1928, 29 F.2d 400.

[8] In re Tietje, D.C.E.D.N.Y.1920, 263 F. 917.

[9] In re Brockton Shoe Mfg. Co., Inc., D.C.Mass.1934, 8 F.Supp. 959.

[10] Lowden v. Iowa-Des Moines Nat. Bank & Trust Co., D.C.S.D.Iowa 1935, 10 F.Supp. 430, affirmed, 8 Cir., 1936, 84 F.2d 856, certiorari denied. 1936, 299 U. S. 584, 57 S.Ct. 109, 81 L.Ed. 430.

50

thereafter revive it. We think it clear this is what happened here. With full knowledge of the reorganization proceedings the appellant manifestly and without apparent reservation did all it possibly could have done to recognize that the trustee held the entire debtor's deposit as trustee for the benefit of the debtor's estate. This constituted a relinquishment of whatever set-off the bank may have had. Under such circumstances the court had summary jurisdiction to issue the turnover order against it.

The order of the District Court is affirmed.

## RHODES' ESTATE v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9078.

Circuit Court of Appeals, Sixth Circuit.

Oct. 16, 1942.

F. E. Hagler, of Memphis, Tenn., for petitioner.

Louise Foster, Spec. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, and Helen Carloss, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before HAMILTON, MARTIN, and McALLISTER, Circuit Judges.

### PER CURIAM.

On petition for review of a decision of the United States Board of Tax Appeals, it appears from the record that on November 18, 1937, the Carroll Furniture Company of Atlanta, Georgia, declared a cash dividend of $20.00 per share payable on December 18, 1937, to stockholders of record at 12:00 o'clock noon on November 26, 1937. The taxpayer, Herman W. Rhodes, was the record owner of 600 shares of stock of said company on each of the three said dates.

The taxpayer offered to sell his dividend right for $11,925.00 to C. H. Patton of Memphis, Tennessee, an intimate friend. The offer was accepted and on December 7, 1937, Patton borrowed $12,000.00 from a bank for the purpose of making the purchase and pledged the assigned dividend right as collateral for the loan.

The check in payment of said dividend when issued on December 18, 1939, was made payable to Patton, who indorsed it to the bank from which he had obtained the loan, and the bank stamped the note paid and returned it to Patton.

The question is whether the amount received by the taxpayer from Patton should be treated as ordinary income as held by the Board, or whether such amount constitutes capital gain which is available as an offset against capital losses as the petitioner contends.

In our opinion under the circumstances here present, the sum received by the taxpayer was not capital gain as that phrase is used in Section 117(b) of the Revenue Act of 1936, 49 Stat. 1648, c. 690, 26 U.S.C.A. Int.Rev.Acts, page 873, but was taxable as ordinary income under Section 22(a) of the Revenue Act of 1936, 49 Stat. 1648, c. 690. Compare Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655; Helvering v. Eubank, 311 U.S. 122, 61 S.Ct. 149, 85 L.Ed. 81; Harrison v. Schaffner, 312 U.S. 579, 61 S.Ct. 759, 85 L.Ed. 1055.

The order of the Board is affirmed.