**In re SUSQUEHANNA CHEMICAL CORPORATION.**

No. 21716.

United States District Court
W. D. Pennsylvania.

Oct. 13, 1948.

As Amended Jan. 5, 1949.

Henry S. MacDonald (of Gifford, Graham, MacDonald & Illig), all of Erie, Pa., for petitioner.

Frank B. Quinn and James Wolfe (of English, Quinn, Leemhuis & Plate), all of Erie, Pa., for respondent.

GOURLEY, District Judge.

The Susquehanna Chemical Corporation is in reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C.A. §§ 501, 676. The matter now before the Court relates to the petition of the Trustees to compel the Producers Bank and Trust Company, Bradford, Pennsylvania, hereinafter identified as the "Bank" to surrender to the Trustees certain funds of the debtor which were on deposit with the Bank when the petition for reorganization was filed. The Bank has filed an answer in which it admits the essential allegations of the petition, but disputes the right of the Trustees to the funds, asserting a right of set-off under Section 68,

sub. a of the said Act, 11 U.S.C. Section 108, sub. a and Chapter X, Section 200, 11 U.S.C.A. § 600.

On the 30th day of July, 1948, the debtor company through corporate action filed its petition for reorganization in which it was set forth, inter alia, that said company was unable to pay its debts as they matured although said company was not insolvent. Said petition being filed in good faith, approval was given by the Court and trustees appointed.

Since the organization of said company in 1946, business was continuously carried on with the Bank. At the close of the business of the Bank and the debtor on July 30, 1948, there was a balance in four separate accounts to the credit of the company, said accounts being—

Special Account............... $ 2,320.42
Payroll Account............... 5,592.26
Impressed Fund Account....... 658.42
General Account............. 12,204.98

Total .................... $20,776.08

The above were demand checking accounts of the debtor, and it was intended by both parties that the funds deposited would be used by the debtor in its regular course of business, and the funds had no relationship to the debtor's note held by the Bank. Although the officers of the Bank stated that said checking accounts were considered by the Bank as security for the indebtedness owed by the company, said fact was never communicated to or discussed with any representative of the company.

At the close of business of the Bank and debtor company on July 30, 1948, the Bank was the owner and holder for value of a certain promissory note in the amount of $39,000, which contained a clause for confession of judgment, executed under seal by the President and Treasurer of the company, dated July 9, 1947, payable on demand, with interest at six percent (6%) per annum. As a result of sundry payments made on the interest and principal of said note, as of July 30, 1948 the principal of said note was reduced to $27,000 and interest was owed thereon from July 15, 1948; said note was unsecured.

The Bank had no notice or knowledge of the petition for reorganization being filed on July 30, 1948. On July 31, 1948, one of the Trustees informed an executive officer of the Bank of the filing and approval by the Court of the company's petition in reorganization. Said Bank was not open for business on July 31, 1948. On August 2, 1948, the Bank charged the four accounts of the debtor with sums equal to the balance in said accounts, and credited the total amounts thus charged to the note of the company owed to the Bank.

On July 30, 1948, there was outstanding a great number of checks drawn against the accounts of the company. On and after August 2, 1948 payment of all checks drawn against the accounts of the company was refused by the Bank and all checks were returned. On August 3, 1948, the Trustees presented checks payable to themselves, drawn on the accounts of the debtor company, in the amounts of the balances in said accounts; payment of the said checks of the said Trustees was refused by the Bank for the reason stated in the rider thereto attached, to wit, "No Funds."

On June 30, 1948, a month previous to the filing of the petition in reorganization, the book value of the assets of the company was $1,241,927.34, including current assets of $433,464.53; the liabilities of said company on said date were $566,564.19. At the date of the filing of the petition for reorganization on July 30, 1948, the ratio of assets to liabilities was substantially the same as the month previous.

The four separate accounts which were carried in the Bank were individually identified, as a matter of business expediency, as follows:

Special Account—To be used in payment of secretary and executive salaries; checks to be signed by a representative of the company at Bradford, Pennsylvania, and by an executive of the company at his office in the City of New York, New York.

General Account—To be used in payment of vendors and wood suppliers as invoices were submitted for materials furnished; checks to be signed by a representative of the company at Bradford, Pennsylvania, and by an executive officer in the City of New York, New York.

Payroll Account—To be used in payment of services rendered by all persons to the company who were employed on an hourly or weekly rate; checks to be signed only by a representative of the company at Bradford, Pennsylvania.

Impressed Fund Account—To be used in payment of freight and trucking services as invoices were presented; checks to be signed by a representative of the company at Bradford, Pennsylvania.

The company originally borrowed money from the Bank on October 9, 1946, at which time a loan of $40,000 was extended, payable on demand. This obligation was refinanced on July 9, 1947, on which date a note was executed in the amount of $39,000, and is the same note on which there was a balance due on July 30, 1948 of $27,000, with interest from July 15, 1948.

On February 13, 1948, a representative of the Bank advised the company that since the ratio of their loans to the outstanding capital of the Bank was not in excess of five to one, it would be necessary for the company to refinance said indebtedness. No answer was received by the Bank, and on March 8, 1948 a similar request was made to the company. The company advised the Bank that arrangements were being made to refinance said indebtedness. On June 4, 1948 an additional request was made by the Bank to the company relative to the re-

financing of said indebtedness. On June 10, 1948 the company advised the Bank that the efforts which were being extended to refinance said indebtedness had not as yet materialized but the matter would soon be given attention.

Although said loan of July 9, 1947 was granted by the Bank on an unsecured basis, it is contended by the Bank that since moneys were to be paid from the respective checking accounts on a demand basis, the Bank considered said checking accounts as an obligation on their part to pay to the company in the same category as the obligation of the company to pay the Bank the amount of the note obligation. In short, the Bank considered it had a banker's lien against the four accounts, with the right of set-off against the demand note obligation. This theory or thought was never communicated by the Bank to any officer or representative of the company, and the company, therefore, drew on said four accounts as the circumstances arose in order that payment of obligations could be made by the company which arose in its regular course of business. The company, therefore, did not consider the deposits in said accounts as having any relationship to the note of the company held by the Bank. The amount of deposits in the respective accounts during the period commencing on July 9, 1947 and terminating on July 30, 1948, was as follows:

| Date | General Acct. | Payroll Acct. | Impressed Acct. | Special Acct. | Total |
|---|---|---|---|---|---|
| 7/ 9/47 | 43,297.61 | 12,956.49 | 1,332.54 | 308.43 | $57,895.07 |
| 7/31/47 | 103,062.62 | 1,823.74 | 2,261.67 | 7,786.94 | 114,934.97 |
| 8/31/47 | 70,943.34 | 27,012.35 | 967.96 | 8,883.65 | 107,807.30 |
| 9/30/47 | 66,046.21 | 23,996.77 | 2,786.80 | 9,558.16 | 102,387.94 |
| 10/30/47 | 39,308.67 | 12,954.38 | 2,075.10 | 8,348.88 | 62,687.03 |
| 11/30/47 | 55,422.15 | 12,217.37 | 1,197.69 | 9,322.63 | 78,159.84 |
| 12/31/47 | 21,041.28 | 14,374.74 | 1,613.52 | 9,213.04 | 46,242.56 |
| 1/31/48 | 37,980.62 | 17,512.43 | 2,461.70 | 125.45 | 58,080.20 |
| 2/28/48 | 21,428.56 | 8,842.30 | 747.79 | 8,558.98 | 39,577.63 |
| 3/31/48 | 42,690.98 | 14,008.75 | 703.98 | 8,801.83 | 66,205.54 |
| 4/30/48 | 14,580.06 | 7,149.37 | 2,300.00 | 31.23 | 24,060.66 |
| 5/31/48 | 3,672.34 | 5,367.84 | 539.44 | 8,478.71 | 18,058.33 |
| 6/30/48 | 18,893.11 | 6,804.08 | 67.03 | 66.65 | 25,830.87 |
| 7/30/48 | 12,204.98 | 5,592.26 | 658.42 | 2,320.42 | 20,776.08 |

During the whole of the period of time from July 9, 1947 to July 30, 1948, the company had substantial real estate interests together with equipment and personal property used in the furtherance of its business interests. In the five counties situate in the Western District of Pennsylvania and near to where the Bank carried on its business, the value of the real estate and equipment owned by the company was over $1,000,000. The personal property, other than equipment, was valued at over $50,000. No mortgages were outstanding against the real estate, and the only lien of record was a judgment note in which there was a balance due of $2,250 on July 30, 1948. No chattel mortgages, bailment leases, conditional sale contracts or any other liens of any nature whatsoever were outstanding against any of the personal property. No executions had been threatened or issued by any person in connection with any obligation owed by the company. The Bank had not entered judgment on the note as a lien against any of the real estate owned by the company or had execution been levied against any of the personal property.

The explanation of the Bank for not entering the note as a lien against the company was threefold:

(a) It considered a banker's lien existing against the four checking accounts to which redress could be made at any time as a set-off against the note.

(b) If a lien were created against the real estate or personal property, credit embarrassment would have been caused the company.

(c) If a lien were created against the property of the company, such would have amounted to an act of bankruptcy.

In addition to the foregoing, on July 30, 1948 the company made the following deposits:

General Account .............. $7,049.45
Impressed Account ........... 687.21

Total Deposits .............. $7,736.66

Furthermore, the company had drawn checks on some of the accounts, which were presented to and paid by the Bank on July 30, 1948, as follows:

General Account .............. $ 855.56
Impressed Account ........... 112.55
Payroll Account .............. 1270.10

Total Withdrawals ........... $2238.21

The balance in said four accounts of $20,776.08 on July 30, 1948 reflects the deposits of $7,736.66 and the withdrawals of $2,238.21 on July 30, 1948.

No appropriation or set-off was made by the Bank as to funds deposited subsequent to July 30, 1948.

It is contended by the Trustees that the action of the Bank in crediting the amount of $20,776.08, which was on deposit in the four accounts, to the note owed by the company hindered and embarrassed the Trustees in the administration of the trust estate. Considerable ill-will and embarrassment arose to the Trustees in meeting the payment of the obligations for which checks had been issued by the company. That as a result of no funds being available, it was necessary for the Trustees to petition for authority to issue certificates of indebtedness, and the Court granted authority to borrow up to $200,000 in order that operation of the business could be continued. Seventy-five thousand dollars has been borrowed by the Trustees up to this time. The Trustees further contend that the set-off provided by Section 68, sub. a, of the Bankruptcy Act is not applicable in the estate of a debtor in the process of reorganization under Chapter X of the Bankruptcy Act.

The question for the Court's determination is—

Under Chapter X of the Bankruptcy Act are deposits made in the usual course of business by a debtor, not insolvent, subject to appropriation as a set-off against a matured and unsecured demand note owed by the debtor to the bank?

The Act of Congress relating to bankruptcy, Section 68, 11 U.S.C.A. § 108 provides:

"In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid.

"A set-off or counterclaim shall not be allowed in favor of any debtor of the bankrupt which (1) is not provable against the estate and allowable under subdivision g of section 93 of this title; or (2) was purchased by or transferred to him after the filing of the petition or within four months before such filing, with a view to such use and with knowledge or notice that such bankrupt was insolvent or had committed an act of bankruptcy. As amended June 22, 1938, c. 575, § 1, 52 Stat. 878."

Chapter X, Section 200, 11 U.S.C.A. § 600 provides: "Where not inconsistent with the provisions of this chapter, the rights, duties, and liabilities of creditors and of all other persons with respect to the property of the debtor shall be the same, before the approval of the petition, as in a bankruptcy proceeding before adjudication and, upon the approval of the petition, as in a bankruptcy proceeding upon adjudication. July 1, 1898, c. 541, § 200, as added June 22, 1938, c. 575, § 1, 52 Stat. 893."

■ It is well established that a bank deposit made in the usual course of business may, upon the bankruptcy of a depositor, be appropriated by the bank and applied to the payment of a debt due the bank by the depositor. Cumberland Glass Mfg. Co. v. DeWitt, 237 U.S. 447, 35 S.Ct. 636, 59 L.Ed. 1042; Tyler v. Marine Midland Trust Co. of New York, 2 Cir., 128 F.2d 927; In re Potts, 6 Cir., 142 F.2d 883. The courts of bankruptcy have enforced this right of set-off even where the debt to the bank has not matured. In re American Coils Co., D.C., 74 F.Supp. 723, 725.

■ A corporate reorganization under Chapter X of the Bankruptcy Act is not a bankruptcy proceeding but a special proceeding which has for its object the rehabilitation of the debtor. Lowden v. Northwestern National Bank & Trust Co., 298 U.S. 160, 163, 56 S.Ct. 696, 80 L.Ed. 1114. It differs from bankruptcy in that it contemplates the conservation of the corporation and the continuity of its business and not a liquidation of the assets. The provisions of Section 68, sub. a, of the Act may not be invoked if its application will defeat the ultimate object of the proceeding. Lowden v. Northwestern National Bank & Trust Co., 8 Cir., 84 F.2d 847.

■ A debtor in a reorganization proceeding may not be treated as a voluntary bankrupt unless it appears that insolvency actually exists, and that liquidation rather than reorganization is in order. The rule to be accepted for the purpose of determining whether a set-off should be allowed in a reorganization proceeding is that enforced by courts of equity, which differs from the rule in bankruptcy, chiefly in its greater flexibility, the rule in bankruptcy being framed in adaptation to standardized conditions, and that in equity varying with the needs of the occasion, though remaining constant, like the statute, in the absence of deflecting forces. Lowden v. Northwestern National Bank & Trust Co., supra; In re Monongahela Rye Liquors, 3 Cir., 141 F.2d 864; Prudential Ins. Co. v. Nelson, 6 Cir., 101 F.2d 441, 444, certiorari denied 308 U.S. 583, 60 S.Ct. 106, 84 L.Ed. 489; 128 A.L.R. 812.

It should be kept in mind that a reorganization proceeding is not, in the true sense of a word, a bankruptcy proceeding. The property of a debtor remains in the custody of the Court to be managed and operated by the Court. The purpose of the Act is to protect the interests of the debtor where he is not insolvent but merely unable to meet his debts as they mature; to keep the business and property intact if that can be done; and to provide for the reorganization of the debtor corporation and the development of a plan by the terms of which its stockholders and the creditors may receive fair and reasonable treatment. In re Petition of Portland Electric Power Co., 9 Cir., 162 F.2d 618; Lowden v. Northwestern National Bank & Trust Co., supra.

■ When a petition for corporate reorganization is filed, all property in which the debtor has any claim or interest passes under control of the Bankruptcy Court, and, upon approval of the petition, title vests in the trustee as of the date of the filing of the petition. In re Cuyahoga Finance Co., 6 Cir., 136 F.2d 18.

The Bank places considerable reliance on the case of Tyler v. Marine Midland Trust Co. of New York, 2 Cir., 128 F.2d 927, in which the court permitted a set-off of an unmatured note in an arrangement proceed-

ing under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq.

This was held although the arrangement proceeding was dismissed at the request of the debtor, and a proceeding for reorganization was immediately filed under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. A proceeding for arrangement is any plan of a debtor for the settlement, satisfaction, or extension of the time of payment of his unsecured debts, upon any terms. Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq.

I do not believe the rule of law which was applied in Tyler v. Marine Midland Trust Co., supra, has application to the facts which exist in the instant case. In that case the debtor company was insolvent and there existed an understanding between the bank and debtor that a deposit account will be maintained. In the instant case the debtor company is not insolvent and no understanding existed as to the maintenance of deposit accounts.

Furthermore, the United States Court of Appeals for the Third Circuit has stated "it is questionable [in a reorganization proceeding] whether a bank can set off a debtor's unmatured obligation against its deposit." In re Mauch Chunk Brewing Co., 3 Cir., 131 F.2d 48, 49, 143 A.L.R. 451.

No consideration has been given in any reported case that I have been able to find, which decides the question as to the absolute right of set-off in a reorganization proceeding where the note is matured and the debtor is solvent.

In support of the parties' respective contentions, counsel have cited for the consideration of the Court the authorities in Pennsylvania which relate to set-offs.

 Under the law of Pennsylvania a demand note is due without formal demand. Generally in Pennsylvania a bank deposit and a demand obligation of the depositer to the bank extinguish each other, except for the net debt as the right to set-off is claimed. Aarons v. Public Service Building and Loan Association, 318 Pa. 113, 178 A. 141.

This decision overruled the previous decision of the Superior and Supreme Courts of Pennsylvania which held that it was necessary for the appropriation or set-off to exist before legal action was instituted against the fund which the bank elected to set off against the indebtedness owed to the bank. The case overruled being Valiant Co. v. Pleasonton, 108 Pa.Super. 197, 164 A. 143, affirmed 311 Pa. 587, 167 A. 330.

 In Pennsylvania the broader equitable principles of set-off are available to defendants in actions both at law and in equity, and where there is a special equity to be subserved, and no equity of third parties to be injured, a set-off will be allowed upon equitable principles though the occasion does not come within the language of the statute relating to set-offs. Harr v. Bankers Security Corp., Appellant, 129 Pa. Super. 547, 551, 196 A. 522.

 A bankruptcy court in determining what claims are allowable and how a debtor's assets shall be distributed does not apply the law of the state where it sits. Erie R. Co. v. Tompkins, 304 U.S. 84, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, has no such implication that the law of the state should be applied. Bankruptcy courts must administer and enforce the Bankruptcy Act as interpreted by the Supreme Court of the United States, in accordance with the authority granted by Congress, to determine how and what claims shall be allowed under equitable principles. Vanston Bondholders Protective Committee v. Green, 329 U.S. 156, 163, 67 S.Ct. 237, 91 L.Ed. 162; Heiser v. Woodruff, 327 U.S. 726, 732, 66 S.Ct. 853, 90 L.Ed. 970; Prudence Realization Corp. v. Geist, 316 U.S. 89, 95, 62 S.Ct. 978, 86 L.Ed. 1293; American Surety Co. v. Sampsell, 327 U.S. 269, 272, 66 S.Ct. 571, 90 L.Ed. 663.

 Decisions of state courts are not controlling in determining rights of parties to corporate reorganization proceedings under the Bankruptcy Act. In re Petition of Portland Electric Power Co., supra.

Where, therefore, do the equities arise in the instant case?

The Bank argues it was intended that a lien would exist on the funds deposited by the company as security for the demand note. During many of the months after the Bank decided to request payment of the note, the Bank elected to not set off

8

the moneys which were on deposit although the deposits far exceeded the indebtedness. When the claimed right of set-off was exercised, sufficient funds were not on deposit to extinguish the indebtedness. The Bank in substance states that if the reorganization proceeding had not been instituted, the Bank would not have set off the deposits against the note.

I do not believe that the actions of the Bank indicate or establish the understanding to be as contended—to consider the note a lien against the checking accounts of the company.

The Bank could have entered judgment against the debtor and created a lien against its real estate; the only lien of record being in the amount of $2,250, and the real estate interests being valued at approximately $1,000,000.

There is no equity favoring the bank in support of the argument that if the note had been entered of record, such would have constituted an act of bankruptcy on the part of the debtor.

Chapter 3 of the Bankruptcy Act, 11 U.S.C.A., pocket part, § 21, sub-division a(3), provides, inter alia, acts of bankruptcy by a person shall consist of his having suffered or permitted, while insolvent, any creditor to obtain a lien upon any of his property through legal proceedings, and not having vacated or discharged such lien within thirty days from the date thereof, or at least five days before the date set for any sale or other disposition of such property.

The entry of the note against the company, even if insolvent, would not have constituted an act of bankruptcy on the part of the company since the act of bankruptcy intended by Section 3 sub. a of the Bankruptcy Act, 11 U.S.C.A. § 21, sub. a(4), the failure of the debtor to discharge the lien secured within thirty days from the date it was entered, and not the entry of the lien so as to do away with its possible adverse effect on other creditors which constitutes an act of bankruptcy under the statute. In re Flushing Queensboro Laundry, Inc., 2 Cir., 90 F.2d 601; Dysart v. Von Segerlund et al., 9 Cir., 118 F.2d 482, also see 9 Cir., 137 F.2d 755; Arkansas Oil & Mining Co. v. Murray Tool & Supply Co., 8 Cir., 127 F.2d 564.

Under Chapter 3 of the Bankruptcy Act, supra, if the bank in this case had entered the note against the real estate interests of the company, said action would not have been an act of bankruptcy since the company was not insolvent.

Taking into consideration the value of the assets, the liabilities and the lack of insolvency on the part of the debtor corporation, I believe that just cause exists to depart from the rule which exists in bankruptcy, that the absolute right to set-off exists. Irrespective of the acceptance and confirmation of the plan in reorganization, the trustees must have the power to gather in the assets and keep the business going. The need for funds is best exemplified in this case when consideration is given to the fact that it was necessary for the Court to authorize the Trustees to issue certificates of indebtedness up to $200,000, in order that the business could be continued in operation, and that $75,000 has now been borrowed.

It is my opinion that the recognized principles of equity prohibit the allowance of a right of set-off in a corporate reorganization proceeding where the company is not insolvent and no understanding or agreement existed that the bank was to have a lien against general deposits as security for the indebtedness.

The able argument of counsel for the Bank has been given thorough and careful consideration, but I am driven to the conclusion that the funds should be delivered to the Trustees; for to do otherwise would grant to the bank a preference which would be inconsistent with the purposes and intent of the Bankruptcy Reorganization Act.

Under no circumstances should the bank be entitled to set off the amount of deposits made by the debtor on the date the petition for reorganization was filed. The mutual accounts between a bankrupt and his bank of deposit are closed by operation of law at the time the petition in bankruptcy is filed, and no right of set-off under the Bankruptcy Act exists in the bank as to deposits made after that time even though neither party knew of the filing of the petition when the deposit was made.

In re Michaelis & Lindeman, D. C., 196 F. 718; 128 A.L.R. 812; In re Montgomery Bros., D. C., 51 F.2d 284.

In a reorganization proceeding the rights of the parties are fixed as of the date of the filing of the petition, and a bank is not entitled to set off debts owed it by a debtor against deposits made by the corporation after the filing but before the approval of a petition for reorganization. 8 C.J.S., Bankruptcy, § 851c, page 1812; 8 C.J.S., Bankruptcy, § 857d, page 1827; In re Hotel Martin Co. of Utica, 2 Cir., 83 F.2d 231.

It might be that some of the deposits were made on July 30, 1948 prior to the filing of the petition in reorganization. No record was kept by the Clerk of Courts as to the hour of the day the petition was filed.

Regardless, the general rule in a judicial proceeding is that fractions of a day are not to be regarded, and all transactions on the same day are to be regarded as occurring at the same instant time. The exception to the rule is that when the application of the general principle would result in manifest injustice. If so, the exact hour or minute at which acts were done may be shown in order to prevent a great mischief or inconvenience. Moore v. Third National Bank at Philadelphia, Appellant, 41 Pa. Super. 497; 85 A.L.R. 382.

The Bank had held the demand note since July 9, 1947. The deposits received on July 30, 1948, in the amount of $7,736.66, in no way changed or altered the Bank's position. The Bank did not extend credit in reliance on the deposit made during the day that the petition for reorganization was filed and approved. There does not appear to be any equitable reason why the Bank should be preferred or why it has any greater claim to the money covered by the deposit of $7,736.66 than the other creditors of the company. I see no reason why the general rule that the law will not take note of a fraction of a day should be departed from for the benefit of the bank. Moore v. Third National Bank at Philadelphia, supra; 85 A.L.R. 382.

The deposits of $7,736.66 made by the debtor on the date the petition in reorganization was filed, and the payments made by the Bank on the same day of checks pre-viously drawn by the debtor are reflected in the balance of $20,776.08. Equity, in my judgment, requires that the credit taken by the Bank for the checks paid be permitted to stand.

An appropriate Order will be filed.

Order.

And Now, this 13th day of October, 1948, the Producers Bank and Trust Company, Bradford, Pennsylvania, is hereby directed to turn over to Henry A. Satterwhite and H. W. Tutchings, Trustees of the Susquehanna Chemical Corporation, debtor in reorganization under Chapter X of the Bankruptcy Act, the amount of $20,776.08 which was on deposit in the four separate checking accounts of the debtor in said bank on July 30, 1948, the date of the filing and approval of the Petition in Reorganization.