In re L.P. BRITTON, Jr., d/b/a Britton Trading Co., Britton Trading Co., Inc., St. John's Farms and Gay H. Britton, Debtors.

In re Jennings Bryan TINGLE, Sr., Fannie Rowe Tingle, Debtors.

In re Jennings Bryan TINGLE, Jr., Debtor.

In re J.B. BERRY and Pauline M. Berry, Debtors.

Bankruptcy Nos. 86–03019–MO2, 87–00959–MO4, 87–00960–MO4 and 87–00841–MN4.

United States Bankruptcy Court, E.D. North Carolina.

Jan. 15, 1988.

Rudolf A. Renfer, Jr., Asst. U.S. Atty., for U.S.

Kenneth H. Gillespie, New Bern, N.C., for debtors Tingle and Berry.

David L. Eades, Charlotte, N.C., for Brittons.

Richard M. Stearns, Kinston, N.C., trustee for Tingle and Berry.

Gregory B. Crampton, Raleigh, N.C., trustee for Britton.

Edward J. Harper, II, Greenville, N.C., for Federal Land Bank of Columbia (FLB).

William F. Hill, New Bern, N.C., for Wachovia Bank and Trust Co.

## MEMORANDUM OPINION AND ORDER

THOMAS M. MOORE, Chief Judge.

These matters are before the court on the motions of the United States of America to lift the automatic stay and allow set-offs. The motions are resisted by the debtors, the trustees and The Federal Land Bank of Columbia, and in the Tingle cases, by Wachovia Bank and Trust Company.

The United States of America (hereinafter "USA") is represented by Rudolf A. Renfer, Jr., Assistant United States Attorney. The debtors in the Tingle cases and the Berry case are represented by Kenneth H. Gillespie, Attorney at Law, New Bern, North Carolina. The Brittons are represented by David L. Eades, Attorney at Law, Charlotte, North Carolina. The trustee in the Tingle cases and the Berry case is

Richard M. Stearns, Attorney at Law, Kinston, North Carolina. The trustee in the Britton case is Gregory B. Crampton, Attorney at Law, Raleigh, North Carolina. The Federal Land Bank of Columbia (hereinafter "FLB") is represented by Edward J. Harper, II, Attorney at Law, Greenville, North Carolina. Wachovia Bank and Trust Company is represented by William F. Hill, Attorney at Law, New Bern, North Carolina.

These cases involve similar facts and identical questions of law. As a result, the matters were consolidated for hearing.

## FINDINGS OF FACT

In each of these cases, the debtors were indebted to Farmers Home Administration (hereinafter "FmHA") at the time their petitions were filed. Prior to bankruptcy, the male debtors were engaged in farming operations and each entered into contracts with the Commodity Credit Corporation (hereinafter "CCC") to participate in the 1986 or 1987 price support and production adjustment program on the farms they operated. The contracts required the debtors to protect the land designated as "acreage conservation reserve" by planting certain cover crops or following certain practices on such land and to control erosion, insects, weeds and rodents. (Form CCC–477, para. 3B). Upon compliance with the contracts, the male debtors became entitled to certain payments from the CCC. The amount of the payments was unliquidated and could not be determined until after the crop season ended. As a result, the payments to the male debtors did not become due and payable until post-petition. In the initial motions, FmHA requested authority to set off the debts due the male debtors arising out of contracts executed post-petition. However, FmHA has acknowledged that these debts are post-petition, and it has withdrawn its request as to such amounts.

The parties have agreed that the court may consider appropriate federal regulations in determining the issues raised by the motions.

*Berry Case:* The Berry case is a Chapter 12 case. The petition was filed on March 31, 1987, under Chapter 7 and was converted to a case under Chapter 12 on August 14, 1987. The CCC is indebted to J.B. Berry in the amount of Seven Thousand Six Hundred Twenty-four and 84/100 Dollars ($7,624.84) for payment due for participation in the 1987 price support and production adjustment program. At the time the Berrys filed their joint petition, they were jointly and severally indebted to the Farmers Home Administration in the amount of Three Hundred Thousand Twenty and 69/100 Dollars ($300,020.69). The claim was secured by real property with a value of approximately Ninety-five Thousand and No/100 Dollars ($95,000). On September 10, 1987, FmHA filed a proof of claim for the amount due from debtors. The proof of claim did not assert any setoff. On September 17, 1987, FmHA filed a motion to lift the automatic stay and set off the amount owed the male debtors by CCC against the joint and several debt owed by the debtors to FmHA. An amended proof of claim was filed by FmHA on October 19, 1987, which asserted the right to set off the debt from CCC to the male debtor against the joint and several debt of debtors to FmHA.

*Tingle Cases:* On April 10, 1987, Jennings Bryan Tingle, Sr., and wife, Fannie Rowe Tingle, filed a joint Chapter 12 case and Jennings Bryan Tingle, Jr., filed an individual case under Chapter 12. Cheryl Potter Tingle, the wife of Jennings Bryan Tingle, Jr., is not in bankruptcy. The three (3) debtors and Cheryl Potter Tingle are jointly and severally indebted to FmHA in the amount of One Hundred Ninety-four Thousand Five Hundred Fifty-one and 17/100 Dollars ($194,551.17). The debt is secured by certain real property, but because of the claims of senior lien holders, the claim of FmHA is unsecured. The CCC is indebted to Jennings Bryan Tingle, Jr., in the amount of Sixty-four Thousand Eight Hundred Sixteen and 85/100 Dollars ($64,816.85) for payments due under the 1986 and 1987 corn and wheat price support and production adjustment program. The CCC is indebted to Jennings Bryan Tingle, Sr., in the amount of Fifty-eight Thousand Sev-

en Hundred Fifteen and 48/100 Dollars ($58,715.48) for payments due under the 1986 and 1987 corn and wheat price support and production adjustment program. The court would have it noted that the amounts of CCC's indebtedness to the Tingles were determined by court analysis of the contracts offered as exhibits by the USA and not merely by consideration of the cover sheets attached to these contracts. On May 18, 1987, FmHA filed a proof of claim against Jennings Bryan Tingle, Jr., and against Jennings Bryan Tingle, Sr., and wife for One Hundred Ninety-four Thousand Five Hundred Fifty-one and 18/100 Dollars ($194,551.18). The proofs of claim did not assert any set-off. On September 8, 1987, FmHA filed motions to lift the automatic stay and set off the amount owed the male debtors by CCC against the joint and several debts owed by the debtors to FmHA. On October 19, 1987, FmHA filed an amended proof of claim against the debtors and asserted the right to set off the debts from CCC to the male debtors against the joint and several debts of the debtors to FmHA.

*Britton Case:* The Brittons filed a petition under Chapter 11 on December 31, 1986. At the time, the debtors were jointly and severally indebted to FmHA on an unsecured debt of Five Hundred Sixty Thousand Three Hundred Fifty-five and 25/100 Dollars ($560,355.25) and a secured debt in the amount of One Hundred Thirty-two Thousand Eight Hundred Forty-nine and No/100 Dollars ($132,849). On March 19, 1987, FmHA filed proofs of claim for both debts and did not assert any set-off. On October 22, 1987, FmHA filed a motion to lift the automatic stay and requested authority to exercise its right of set-off. On October 23, 1987, the FmHA filed amended proofs of claim and asserted the right to set-off all program payments due the male debtor. The CCC is indebted to the male debtor in the amount of Twenty-two Thousand Three Hundred Forty-one and 80/100 Dollars ($22,341.80) for payments due for participation in the 1987 price support and production adjustment program.

## ISSUE

The issue is whether the USA has a right to set off the program payments due the male debtors from CCC against the debtors' joint and several obligations to FmHA and, if so, whether the automatic stay should be lifted to permit the set-off.

## CONSIDERATION OF ISSUE

The USA contends that it has the right to set off under 31 U.S.C. § 3716 which authorizes the head of an agency to make an administrative "offset" under certain conditions. However, § 3716 does not apply in a bankruptcy case. 31 U.S.C. § 3716(c)(2). The Bankruptcy Code recognizes the right to offset mutual debts where such right exists at common law or by state statute. 11 U.S.C. § 553(a).

The right to set off mutual debts is a common law doctrine based on principles of equity. It was first recognized in American bankruptcy law in the Bankruptcy Act of 1800 and has continued to be recognized in bankruptcy law up to the present. 4 *Collier on Bankruptcy,* ¶ 553.01 (L. King 15th ed. 1987). As the bankruptcy law has developed, however, certain restrictions have been imposed on the right to set-off. The Bankruptcy Code provides that the filing of a petition operates as an automatic stay against the set-off of any debt owing to the debtor that arose prepetition against any claim against the debtor that arose prepetition. 11 U.S.C. § 362(a)(7). Also, the Bankruptcy Code now permits the trustee to recover certain prepetition set-offs which were not recoverable under the Bankruptcy Act. 11 U.S.C. § 553; 4 *Collier on Bankruptcy* ¶ 553.01 (L. King 15th ed. 1987).

Certain differences between the set-off provisions of the Bankruptcy Act and the Bankruptcy Code should be emphasized. Section 68a of the Bankruptcy Act provides that "In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor, the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid." The language in section 68a pro-

vides for a federal right of set-off. In contrast to section 68a, section 553 of the Bankruptcy Code simply recognizes the right of set-off where it exists in nonbankruptcy law. As a result, many of the cases deciding set-off issues under section 68a of the Bankruptcy Act may not be applicable to cases arising under section 553 of the Bankruptcy Code.

■ It is also essential that the nature of a claim for set-off be examined and defined as either a secured claim or an unsecured claim. If the claim for set-off is a secured claim, then the creditor is not required to file a proof of claim and a failure to file a proof of claim will not affect the creditor's security interest in the collateral. However, an unsecured claim must be filed within the mandatory bar date set by the Bankruptcy Code and Bankruptcy Rules or else the claim will be disallowed. It is settled law that a claim based on a set-off is not a secured claim. *Lowden v. Iowa-Des Moines Nat'l Bank and Trust Co.*, 10 F.Supp. 430, (S.D.Iowa 1935), *aff'd*, 84 F.2d 856, (8th Cir.1936) *cert. denied*, 299 U.S. 584, 57 S.Ct. 109, 81 L.Ed. 430 (1936). As a result, a creditor must file a claim in order to assert the right of set-off. However, 11 U.S.C. § 506 provides that an allowed claim of a creditor that is subject to set-off is a secured claim to the extent of the set-off and unsecured as to the balance. Section 506 does not define the nature of the claim under nonbankruptcy law. It states that "an allowed claim" subject to set-off is to be treated in the bankruptcy context as a secured claim. This requires the creditor to (1) file a proof of claim as required by the Bankruptcy Code and Bankruptcy Rules and (2) properly assert the set-off. Otherwise, the claim of set-off is an unsecured claim.

The right to set-off is recognized in North Carolina. *In re Bank of Sampson*, 205 N.C. 333, 171 S.E. 436 (1933); *Coburn v. Carstarphen*, 194 N.C. 368, 139 S.E. 596 (1927); *Williams v. Coleman*, 190 N.C. 368, 129 S.E. 818 (1925); *Davis v. Manufacturing Co.*, 114 N.C. 321, 19 S.E. 371 (1894). Certain requirements must be met before the right exists. The debtor-credi-

tor relationship must exist at the time of bankruptcy. The debt and credit must be mutual. Even if the right exists, it must be timely and properly exercised and the entity asserting the right must have "clean hands."

■ *Debtor-Creditor Relationship:* When the debtors filed their petition, they were jointly and severally indebted to FmHA. The male debtors had executed contracts with CCC to participate in the 1986 or 1987 price support and production adjustment program. The contracts required the male debtor to perform certain acts before payment became due. The amount of the payment depended on certain mathematical calculations that could not be made until the end of the crop season which was post-petition. The obligations of CCC to the male debtor were contingent and unliquidated. However, the fact that an obligation is contingent and unliquidated does not mean that a debt does not exist. The word "debt" means liability on a claim. 11 U.S.C. § 101(11). A "claim" includes contingent and unliquidated debts. 11 U.S.C. § 101(4). The debtor-creditor relationship existed between FmHA and the debtors and between CCC and the male debtors at the time of bankruptcy. *In re Parrish*, 75 B.R. 14 (N.D. Tex.1987); *Matter of Matthieson*, 63 B.R. 56 (D.Minn.1986); 4 *Collier on Bankruptcy* ¶ 553.10 (L. King 15th ed. 1987).

■ *Mutuality of Parties:* As a general rule, the right to set-off exists only if each party owns his own claim in his own right severally with the right to collect it in his own name against the debtor in his own right and severally. *In re Bank of Sampson*, 205 N.C. 333, 171 S.E. 436 (1933); 4 *Collier on Bankruptcy*, ¶ 68.04(2.2), at 876.1 (J. Moore 14th ed. 1978). As a result of this rule, a joint debt may not be set off against a separate debt or vice versa; and debts accruing in different rights are not allowed to be set-off against each other due to lack of mutuality. *In re Bank of Sampson*, 205 N.C. 333, 171 S.E. 436 (1933); *Hodgin v. Bank*, 124 N.C. 540, 32 S.E. 887 (1899).

The North Carolina Supreme Court has denied set-off of joint debts against separate debts or vice versa in partnership cases. *In re Bank of Sampson*, 205 N.C. 333, 171 S.E. 436 (1933); *Hodgin v. Bank*, 124 N.C. 540, 32 S.E. 887 (1899). A partnership is a separate entity and, although the partners are jointly and severally liable for the partnership debt, the primary liability is that of a separate entity and the allowance of set-off in such cases may frequently produce inequitable results. More recent decisions applying common law in the application of section 68a of the Bankruptcy Act have allowed set-off in partnership cases under certain circumstances. *Rochelle v. United States*, 521 F.2d 844 (5th Cir.1975) *modified on other grounds*, 526 F.2d 405 (5th Cir.1976). In the case of *In re Sherman Plastering Corp.*, 346 F.2d 492 (2d Cir.1965), the court allowed a creditor to set-off, under section 68a of the Bankruptcy Act, a debt owed to a debtor who was a joint obligor of a debt to the creditor in the absence of prejudice to third parties or some inequitable result to the debtor. The *Sherman case*, however, arose out of a Chapter 7 case rather than a reorganization or debt adjustment case.

■ In the present case, the debtors are husband and wife, except in the case of Jennings Bryan Tingle, Jr., who filed individually. The debtors are jointly and severally indebted to FmHA. The debt to FmHA was incurred by them jointly and separately and not through a partnership or some other separate entity. The CCC is indebted to the male debtors only. The USA may pursue either of the debtors for the full amount of its claim. Since all of the male debtors are in bankruptcy, the fact that the debtors are jointly and severally indebted to the FmHA does not constitute a logical basis for concluding that the right of set-off does not exist with respect to the sums owed the male debtors by CCC. *In re Sherman Plastering Corporation, id.*, *Rochelle v. United States*, 521 F.2d 844.

■ The FLB also contends that there is no mutuality of parties because the CCC is a separate corporate entity from the USA.

This argument appears to be supported by those cases which hold that a parent corporation may not set-off a debt owed its subsidiary by an entity against a debt it owes to the same entity. *Inland Steel Co. v. Berger*, 327 F.2d 401 (7th Cir.1964). However, the cases which consider factual situations where the USA is acting through a corporate entity are to the contrary. In *Cherry Cotton Mills v. United States*, 327 U.S. 536, 66 S.Ct. 729, 90 L.Ed. 835 (1946), the United States Supreme Court held that the Reconstruction Finance Corporation was an agency of the USA and that the necessary mutuality existed between it and the USA to permit set-off. This holding has been extended to the CCC. *Luther v. United States*, 225 F.2d 495 (10th Cir.1954); *cert. denied*, 350 U.S. 947, 76 S.Ct. 321, 100 L.Ed. 825 (1956). However, there is at least one case to the contrary. *In re Rinehart*, 76 B.R. 746 (Bankr.S.D.1987). Each private corporation is a separate and distinct entity. But the USA may act through a department, an agency within a department or a body corporate, or such other means as may be designated by the Congress and the necessary mutuality is present to permit set-off by the USA.

■ *Waiver or Estoppel:* The right to set-off is a privilege vested in the creditor with a claim against the debtors. If it is not timely and properly exercised, it is waived. *In re Mauch Chunk Brewing Co.*, 131 F.2d 48 (3rd Cir.1942). Or if the creditor's conduct is such as to mislead other parties to their detriment, the creditor may be estopped from exercising the right. *In re Brockton Shoe Mfg. Co., Inc.* 8 F.Supp. 959 (D.Mass.1934). The right is not self-executing and in a bankruptcy context, the creditor is stayed from exercising the right without permission of the court. 11 U.S.C. § 362(a)(7). As a result, the creditor must timely and properly assert the right and then obtain approval of the court before exercising the right. The right may be asserted in a proof of a claim, but it cannot be exercised until the automatic stay is lifted. *In re Ketelsen*, 78 B.R. 573 (Bankr.D.S.D.1987).

In *Cumberland Glass Co. v. DeWitt*, 237 U.S. 447, 35 S.Ct. 636, 59 L.Ed. 1042, a creditor filed a proof of claim without as-

serting the right of set-off. After a plan was confirmed, the creditor attempted to set off a prepetition debt it owed the debtor against the balance of its claim against the debtor. The court denied the set-off.

In the case of *In re Brockton Shoe Mfg. Co., Inc.,* 8 F.Supp. 959, the creditor failed to assert the set-off in a proof of claim. The creditor argued that its counsel advised it that it did not have a right of set-off. The court denied the right to set-off. In reaching this decision, the district court judge, at page 961, stated: "No authority has been brought to my attention by counsel, and I have seen none, to the effect that a person, once estopped, may thereafter take a position inconsistent with his original attitude, if his adversary is paid for the detriment suffered in reliance upon the former's conduct."

In the case of *In re Mauch Chunk Brewing Co.,* 131 F.2d 48, the court denied the right of set-off because it was neither timely nor properly exercised. The court, at pages 49–50, stated:

In each of these cases the action of the creditor was considered tantamount to a renunciation of the privilege of set off. The conduct in each instance amounted to a representation to other creditors and the trustee that it did not choose to apply the funds on deposit with it to the debtors' obligations. Having thus apparently surrendered its claim of set-off, it could not thereafter revive it.

At least one court has held that a creditor may amend its original proof of claim so as to assert a set-off that was not asserted in the original proof of claim. *In re Sound Emporium,* 48 B.R. 1 (Bankr.W.D. Tex.1984). The dispute arose out of a Chapter 7 case and to this extent, it is distinguishable from the facts of the present case. Furthermore, the decision seems inconsistent with *Cumberland Glass Co. v. DeWitt,* 237 U.S. 447, 35 S.Ct. 636, 59 L.Ed. 1042; *In re Mauch Chunk Brewing Co.,* 131 F.2d 48; and *In re Brockton Shoe Mfg. Co., Inc.,* 8 F.Supp. 959, in that if the creditor was estopped or the right waived, then the creditor should not be allowed to subsequently revive the right. As a general rule, the courts are liberal in allowing amendments to claims even after the bar date for filing claims. *Chassen v. United States,* 207 F.2d 83 (2d Cir.1953). *cert. denied,* 346 U.S. 923, 74 S.Ct. 309, 98 L.Ed. 416 (1954); *In re Diplomat Electric Inc.,* 499 F.2d 342 (5th Cir. 1974). There is a distinction, however, between allowing an amendment to a proof of claim to reflect the correct amount owed and allowing an amendment to permit the creditor to assert a right of set-off not previously asserted. The former simply permits an error to be corrected, whereas the latter permits the creditor to assert an affirmative right not previously asserted, and if the failure to assert the right in the original claim is a waiver, then the right cannot be reinstated. Either there is a waiver or an estoppel and the creditor is bound by its conduct, or there is no waiver or estoppel and the set-off may be asserted. The result necessarily depends on the facts of each case.

In Chapter 7 cases, the debtors' assets are being liquidated for distribution to creditors. It is highly unlikely that the debtors or creditors will be misled or will take any action in reliance on a proof of claim filed by another creditor. But in Chapter 11, 12 and 13 cases, the debtor normally continues to operate the business and proposes a plan of reorganization or a plan for adjustment of debts. The success or failure of a plan may depend on whether proceeds due the debtor will be available for operating expenses. A plan of reorganization or for adjustment of debts, if successful, frequently generates dividends substantially in excess of the liquidation value of the debtor's assets. As a result, it is far more likely that other creditors and the debtor will be prejudiced where a creditor is permitted to change his position by asserting a set-off not asserted in the original proof of claim.

Other factors also come into consideration in Chapter 12 cases. In these cases, Congress has fixed a very short time frame in which the debtor must file a plan, *i.e.* ninety (90) days from the filing of the petition. 11 U.S.C. § 1221. The confirmation hearing is required to be concluded within forty-five (45) days of the filing of the plan. 11 U.S.C. § 1224. These provisions of Chapter 12 are designed to benefit

the creditors by requiring prompt confirmation or dismissal of the case. In this context, creditors should be expected to assert the right of set-off in a timely and accurate manner so as to permit the debtor to timely file a plan and other creditors to decide whether to object to the plan.

In Chapter 12 cases, it is likely that the USA will be a creditor in a very large percentage of the cases filed because of its lending activities through the FmHA and Small Business Administration. It is also very likely that the USA will have an offset against Chapter 12 debtors arising out of the various price support and production adjustment programs in which most farmers participate. The mechanics of the USA determining when it is both a debtor and a creditor in the same bankruptcy case so that a set-off can be timely asserted are difficult and complex because of the magnitude of government activities. Likewise, set-offs based on debts owed by the USA as a result of price support and production adjustment programs are usually contingent and unliquidated. This complicates the preparation of the proof of claim. This hurdle may be overcome by the proof of claim reciting the right to set-off all monies due debtor under the particular program. However difficult these problems may be, the USA has the resources and capacity to properly and timely file its proof of claim and assert a set-off where the right exists. Consequently, there is no justification for treating the USA in a manner different from any other creditors with a claim for set-off.

## CONCLUSIONS OF FACT AND LAW

 11 U.S.C. § 553 allows a creditor to assert a right of set-off if such right is recognized under nonbankruptcy law. The right to set-off is recognized in North Carolina if the debtor-creditor relationship existed prepetition and the debt and credit are mutual. In the present case, the debtor-creditor relationship existed at the time the debtors filed their petition and the necessary mutuality of parties does exist. As a result, the USA had the right to set-off the debt it owed the male debtor against the debt the debtors owed the USA. However, in Chapter 11 and Chapter 12 cases, the burden is on the USA to timely and properly file its proof of claim asserting the right of set-off and to seek a lifting of the automatic stay to permit it to exercise this right. The FmHA filed its proof of claim in these cases and did not assert any right of set-off and no action had been taken prior thereto to obtain a lifting of the automatic stay. The filing of the proof of claim without asserting the right to set off is a voluntary waiver of the right to set off its debt to the male debtor against its claim against the joint debtors. The amended proof of claim cannot reinstate the right to set off after it has been waived by the creditor. The request of the USA to lift the automatic stay so as to permit the set-off should be denied, and

IT IS ORDERED, ADJUDGED AND DECREED that the motion of the United States to lift the automatic stay and permit it to set off the amounts due the male debtors against the debt owed it by the debtors is denied, and

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Amended Proofs of Claim filed by Farmers Home Administration in these cases are disallowed.