DONNELL MFG. CO. v. WYMAN, Postmaster at St. Louis.

(Circuit Court, E. D. Missouri, E. D.   September 2, 1907.)

No. 5,480.

POST OFFICE—FRAUD ORDERS—WITHHOLDING MAIL PENDING HEARING.

The Postmaster General is without authority, on the fixing of a date six weeks in advance for a hearing on the question of the issuance of a fraud order against a person or company, to direct all mail addressed to such person or company to be withheld in the meantime.

[Ed. Note.—Nonmailable matter, see note to Timmons v. United States, 30 C. C. A. 79.]

In Equity.

Geo. D. Reynolds and George V. Reynolds, for complainant.

Truman P. Young and Charles H. Dawes, Asst. U. S. Attys., for respondent.

SMITH McPHERSON, District Judge (specially assigned).   The allegations of the bill of complaint are that complainant has a manufacturing plant and warehouse in St. Louis, from which it sells and distributes in several of the states groceries, medicines, and other merchandise through agents.   August 13, 1907, the acting Assistant Attorney General for the Post Office Department directed the St. Louis Postmaster to hand to complainant charges inclosed, which charges were to the effect that complainant was engaged in a scheme to defraud, using the mails in furthering said scheme, and notifying complainant that at Washington City, September 27th, said charges would be heard, at which time complainant could appear at said hearing.   And on the same day (August 13, 1907) the Acting Assistant Attorney General for the Post Office Department directed the St. Louis Postmaster to withhold from delivery all mail addressed to complainant pending such hearing.   August 22, 1907, the Acting Postmaster General by telegram ratified the action of the Acting Assistant Attorney General for that department.   From August 13, 1907, until the present time, complainant's mail has been held in the St. Louis Post Office and delivery thereof refused.   So that the question is: Can the Post Office Department, pending an investigation, which may or may not result in a "fraud order," withhold mail for six weeks of time?

The statutes provide that "the Postmaster General may on evidence satisfactory to him issue a fraud order."   A fraud order is one directing the post office of the addressee to return all mail of such addressee to the senders, sending the same back to the senders directly if the name of such sender is on the envelope, and, when such name is not on the envelope, to send the same to the dead letter office so that that branch of the department can return the letters to the senders; both classes of mail first being stamped "Fraudulent."   The statute authorizing these "fraud orders" needs no defense from the many assaults so often made.   There should be, and must be, some method of preventing the use of the mails in furthering fraudulent schemes, and to say that the use of the mails must go on until judicial proceed-

ings have been concluded is to say that the mails may thus be used until sharpers and rascals have become wealthy by crime. And therefore it was that Congress wisely provided that such mails could be arrested at the destination office and returned to the senders with advices that such mail was insnaring innocent senders. The present occupant of the bench believes most firmly in the efficacy, wisdom, and validity of the statute, and that seldom, if ever, will the statute be used to oppress or harm innocent addressees, and will be speedily corrected when "fraud orders" are mistakenly promulgated. Fraudu-lent concerns always masquerade as legitimate concerns, and an investigation must be had to determine which it is. Complainant's advertisements exhibited to the court illustrate this. From one view point complainant advertised for parties to conduct branch houses with a salary of $1,800 per year plus a commission on sales, but requiring a deposit of $1,000 by the agent as an evidence of good faith. From another view point parties answering such advertisements will enter into contract hurriedly read, if read at all, and agreeing to sell a certain amount of merchandise per month. But the concern furnishing the goods furnishes goods of such inferior quality or at such inflated prices, or both, that it is impossible for the agent to observe the contract, and the result is that the deposit of $1,000 is forfeited by the agent to the concern. This is a very stale and long time method of swindling. That it is swindling need only be stated. And this is what the government contends is being practiced by this concern. Such a scheme as this has been before the courts for years, and, when the latter view point appears from the evidence, the courts as of course brand it as rascality. But whether it is an honest method of business, or a scheme to swindle, depends entirely upon the purposes, and the practices and the results. And when it is a scheme for swindling, how any honest man can object to a fraud order, this court does not discern.

But as to whether it is a scheme to swindle, or an honest enterprise, can only be reached by investigation, and this is what the Post Office Department has set on foot. To determine this the Postmaster General will receive evidence for the complainant, as well as against it. And on all questions of fact the findings of the Postmaster General within the scope of the statute will be conclusive and binding upon the courts, as has heretofore been held by this court as well as by the Supreme Court and the Court of Appeals for this Circuit in the Kansas City Post Office case quite recently. Harris v. Rosenberger, 145 Fed. 449, 76 C. C. A. 225. But such findings, to be binding upon the court, must be after investigation and a hearing. It is very doubtful if such findings are conclusive in the absence of a hearing, because, to conclude the fact, either all the facts must have been submitted to the Postmaster General, or an opportunity to present the same.

The authority of the Postmaster General, as well as of any other department, is fixed by statute, or, as is sometimes the case, fixed by the Constitution. But in this case a "fraud order" has not been issued, and it cannot be known that one will be issued pending the hearing. A dismissal of the proceedings, or a "fraud order," will be the result of the hearing September 27th, or at such other time as the case may be taken up and concluded. It is enough to know that as yet a

"fraud order" has not been issued. If the Postmaster General, or, as was done in this case, by subordinates, had the authority to withhold complainant's mail for six weeks of time, it was by reason of some statute. And at the hearing in this court counsel for the government was wholly unable to present such a statute for consideration, and the most diligent search by the court has been with the same result. Apparently it can be stated that there is no such statute, and therefore no such authority exists. Since the submission of this case, the court has been advised that the date for hearing has been changed to an earlier date. But that does not change the situation, because, if the order was unauthorized, it has not been made valid by changing the date of the hearing. This court does not now hold that the Postmaster General cannot make all needful orders pending the hearing and in furtherance of the hearing. It may or may not be that the Postmaster General or those acting in his name for a limited time can withhold the mail of the addressee. But this court can reach no other conclusion than that for six weeks of time the mail cannot be withheld. A reasonable time only need be given the party for such hearing, and, if the party prolongs the hearing, it may be so that the Postmaster General can make proper orders to protect the public from schemes of swindlers.

It is therefore the opinion of the court that this order of the Acting Assistant Attorney General of the Post Office Department, even though ratified by an Acting Postmaster General later on, was unauthorized, because there is no statute susceptible of a construction giving such authority; and a proper order will be made directing the defendant herein to act as if no such order had been given.