MEYERS v. CHEESMAN et al.

(Circuit Court of Appeals, Sixth Circuit. December 18, 1909.)

No. 1,953.

APPEAL AND ERROR (§ 157*)—GROUNDS FOR DISMISSAL—REVIEW INEFFECTUAL
—COMPLIANCE WITH JUDGMENT.

An appeal from an injunctional order requiring a postmaster to deliver to complainants all mail matter addressed to them received at his office between certain dates and to pay all money orders contained therein will not be entertained, where by reason of a full compliance with said order by appellant by delivering such mail and paying the orders the opinion of the appellate court will be on a purely moot question and it would be powerless to execute any decree it might render in appellant's favor.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 971–978; Dec. Dig. § 157.*]

Appeal from the Circuit Court of the United States for the Eastern District of Kentucky.

Suit in equity by J. W. Cheesman and Clark B. Youtsey against John H. Meyers, as Postmaster. From an order granting a preliminary injunction, defendant appeals. Appeal dismissed.

R. M. Allen, for appellant.

Constant Southworth, for appellees.

Before LURTON, SEVERENS, and WARRINGTON, Circuit Judges.

LURTON, Circuit Judge. This is an appeal, under the 7th section of the Court of Appeals Act of 1891 (Act March 3, 1891, c. 517, 26 Stat. 828 [U. S. Comp. St. 1901, p. 550]), from an interlocutory injunction. The appellees, Cheesman and Youtsey, were engaged in a mail order whisky business at Newport, Ky., under the name of the York Distilling Company, or the York Company. It appears from the record that on December 26, 1908, an assistant attorney employed in the Post Office Department of the United States filed a memorandum with the Assistant Attorney General, charging that one Joseph W. Cheesman and one Clark B. Youtsey were engaged in operating a scheme devised to defraud, and of obtaining money through the mails, by means of fraudulent pretenses, representations, and promises, from the public generally, which said scheme was intended to be effected by the use of the post office establishment of the United States. This memorandum, containing an outline of the alleged fraudulent scheme so being carried on by Cheesman and Youtsey under the name of the York Distilling Company, of Newport, Ky., and the York Company, of Newport, Ky., concluded by recommending that the parties be required to show cause, if any they had, why a fraud order should not be issued against them. On December 28, 1908, John H. Meyers, postmaster at Newport, was notified by the Postmaster General that the appellees herein had been charged with the fraudulent use of the mails, and he was ordered to withhold the delivery of all mail ad-

dressed to the York Distilling Company, or the York Company, until the disposition of said charge. It further apears that the mail so directed to be held was withheld from that date, to wit, December 28th. It further appears that the defendants were given notice of this fraud order and required to appear and show cause, and that they did appear before the Postmaster General, and did contest the sufficiency of the facts, but that on January 12th the Postmaster General made a technical fraud order, in pursuance of his authority under sections 3929 and 4041 of the Revised Statutes, as amended (U. S. Comp. St. 1901, pp. 2686, 2749), which order was in the following words:

"Post Office Department,

"Order No. 2003.                    Washington.                    January 12, 1909.

"It having been made to appear to the Postmaster General, upon evidence satisfactory to him, that the York Distilling Company and the York Company, and their officers and agents of such, at Newport, Ky., are engaged in conducting a scheme or device for obtaining money through the mails by means of false and fraudulent pretenses, representations and promises, in violation of the act of Congress entitled 'An act to amend certain sections of the Revised Statutes relating to lotteries, and for other purposes,' approved September 19, 1890.

"Now, therefore, by authority vested in him by said act, and by the act of Congress entitled 'An act for the suppression of lottery traffic through international and interstate commerce and the postal service, subject to the jurisdiction and laws of the United States,' approved March 2, 1895, the Postmaster General hereby forbids you to pay any postal money order drawn to the order of said concerns and parties, and you are hereby directed to inform the remitter of any such postal money order that payment thereof has been forbidden, and that the amount thereof will be returned upon the presentation of the original order of a duplicate thereof applied for and obtained under the regulations of the department.

"And you are hereby instructed to return all letters, whether registered or not, and other mail matter which shall arrive at your office directed to the said concern and parties to the postmasters at the offices at which they were originally mailed, to be delivered to the senders thereof, with the word 'Fraudulent' plainly written or stamped upon the outside of such letters or matter. Provided, however, that where there is nothing to indicate who are the senders of letters not registered or other matter, you are directed in that case to send such letters and matter to the Division of Dead Letters with the word 'Fraudulent' plainly written or stamped thereon, to be disposed of as other dead matter under the laws and regulations applicable thereto.

"G. L. Meyer, Postmaster General."

On January 15th the appellees filed their original bill in the United States Circuit Court at Covington, Ky., praying for a writ of injunction against the said fraud order, and against the detention under the fraud order of such mail as had accumulated between December 28, 1908, the date of the detention, and January 12, 1909, the date of said fraud order. Later the matter came on to be heard before Judge Cochran upon motion for a preliminary injunction based upon the bill and certain affidavits. Upon that hearing the court below held that the finding of fact by the Postmaster General upon which he based the fraud order complained of was correct, and that the Postmaster General had not exceeded his jurisdiction in making the order which he did make on January 12th. In reference to the mail withheld prior to January 12th, the court below, in an opinion filed and made a part of the transcript, said:

"On December 28, 1908, the Postmaster General made an order directing the defendant to withhold complainants' mail until the charges against them could be investigated and determined, and under this order their mail has been withheld from that date until the making of the fraud order on January 12th. The Postmaster General's right to proceed in such matters is purely statutory. I see nothing in the statutes authorizing the making of such an order. The sole power conferred is to make the fraud order, and that is an order directing the return of complainants' mail, not simply to withhold it until it is determined whether a fraud order shall be made. That order, as I view it, then, was void, and no justification to defendant in withholding complainants' mail. Authority for this position may be found in the case of Donnell Mfg. Co. v. Wyman (C. C.) 156 Fed. 415. The application for a preliminary injunction against further withholding the mail which has been withheld under the order; i. e., prior to the date of the fraud order, to wit, January 12th, is sustained."

Thereupon the court made an order in the following words:

"The court finds that the complainants are entitled to have delivered to them all mail received by the defendant prior to the making of the fraud order on January 12, 1909, and therefore grants said motion for preliminary injunction for the delivery of said mail, and overrules the motion for the preliminary injunction requiring the delivery of the mail received by defendant after said date. * * * Wherefore it is ordered that the defendant, John H. Meyers, postmaster at Newport, Kentucky, deliver to the complainants forthwith all mail received by him addressed to the York Distilling Company or the York Company, their officers or agents as such, up to the making of the fraud order on January 12, 1909, and to pay all money orders inclosed in such mail. * * * *"

On the same day the defendant in said injunction bill, John H. Meyers, being the United States postmaster at Newport, Ky., prayed and was allowed an appeal to this court from the aforesaid interlocutory order and injunction. No supersedeas was asked at the time this appeal was prayed, and it has been conceded at the bar that the appellant obeyed the order of the court below and immediately delivered all mail matter which had been detained between December 28, 1908, and January 12, 1909, and has paid all postal orders contained in any such mail payable to the appellees.

This fact makes it most evident that the question now before the court is a mere moot question. It is not a case of where property has, by direction of the court, been taken from one party and turned over to another, or where money has, under the direction of the court, been paid by one litigant to another; for in such cases the court might find itself able to undo that which had been done, by compelling a restitution of that which has been erroneously delivered or paid. Mail matter actually delivered to the addressee, and postal orders actually paid to the persons entitled, constitute executed transactions, and leave the court helpless in the matter of undoing that which may possibly have been unadvisedly done. The court will not do an idle thing, and will not sit to consider whether a thing has been rightfully or wrongfully done, when it has no power to effectually correct the matter.

From this order this appeal was duly allowed, but no stay of proceedings was sought or directed. It is now conceded at the bar that the order directing the delivery of mail detained between December 28, 1908, and January 12, 1909, and the payment of postal orders contained in the mail detained before the fraud order of January 12th, has been

in all respects executed by the delivery of all such mail and the payment of all such money orders. After such compliance with the order of the court below, it is difficult to see what this court can do which would be of any practical effect to either party. Of course, there may be situations in which, after property has been delivered by one party to another under an erroneous order of a court, the wrong might be remedied by a redelivery or restoration; but in respect to such an order as is here complained of no practical method of undoing that which has been done is suggested or appears to us. In Mills v. Green, 159 U. S. 651, 16 Sup. Ct. 132, 40 L. Ed. 293, the Supreme Court said:

"The duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it. It necessarily follows that when, pending an appeal from the judgment of a lower court and without any fault of the defendant, an event occurs which renders it impossible for this court, if it should decide the case in favor of the plaintiff, to grant him any effectual relief whatever, the court will not proceed to a formal judgment, but will dismiss the appeal. And such a fact, when not appearing on the record, may be proved by extrinsic evidence."

This statement of the rule was approved and followed in American Book Company v. Kansas, 193 U. S. 49, 52, 24 Sup. Ct. 397, 48 L. Ed. 613. The rule and its general application to the case has not been denied, but counsel for the government have urged a determination of the question raised as to the powers of the Postmaster General to detain mail pending a hearing of a proposed fraud order as one of much practical importance in the administration of the authority of that officer under the statute against the use of the mails for carrying on fraudulent schemes. This would be to give an opinion upon a moot question—an opinion for the future guidance of executive officers of the government. To express an opinion as to the powers of the Postmaster General in a case where the court would be powerless to execute any decree or judgment in the premises would not be the exercise of judicial powers. United States v. Evans, 213 U. S. 297, 29 Sup. Ct. 507, 53 L. Ed. 803.

The proper judgment is that the appeal should be dismissed.