Irwin GREENE, d/b/a Tigron Distributors, Plaintiff,

v.

William P. KERN, Postmaster, Jersey City, New Jersey, Defendant.

Civ. A. No. 507–59.

United States District Court
D. New Jersey.

July 1, 1959.

Judgment Affirmed Aug. 25, 1959.
See 269 F.2d 344.

Kleinberg, Moroney & Masterson, Newark, N. J., Bass & Friend, of counsel, by Milton Bass, New York City, for plaintiff.

Chester A. Weidenburner, U. S. Atty., by Charles H. Hoens, Jr., Asst. U. S. Atty., Newark, N. J., for defendant.

WORTENDYKE, District Judge.

Presumably invoking the jurisdiction delegated by 28 U.S.C. § 1339 (1952), plaintiff (Tigron) seeks relief from the action of the defendant postmaster, taken pursuant to an order made by the Postmaster General of the United States on May 27, 1959, impounding all mail addressed to Tigron pending the termination of proceedings instituted by the Post Office Department (1) for identification of Tigron, in accordance with 39 U.S. C.A. § 255 (1952), and (2) for a fraud

order pursuant to § 259 of the same Title.

A complaint was docketed on May 27, 1959 in the United States Post Office Department, by the Department's General Counsel, alleging reasonable cause to believe that under the fictitious name "Tigron Distributors" a fraudulent scheme was being conducted by Tigron by the use of the mails, and recommending that a fraud order be issued pursuant to 39 U.S.C.A. §§ 259 and 732. On the same date motion was also made by the General Counsel to the Judicial Officer of the Department to order the postmaster at Jersey City, New Jersey to withhold from delivery until further notice all mail addressed to "Tigron Distributors" on the ground that it had not been identified within the purview of 39 U.S.C.A. § 255. On the basis of the latter motion, an order was issued by the Judicial Officer on the same date, directing the Jersey City postmaster to impound all mail addressed to "Tigron Distributors." Also on May 27, notice was given to Tigron of a hearing upon the complaint of the General Counsel, to be held on June 16, 1959 at Washington, D. C. From the complaint and exhibits it appeared that Tigron had been using the mails for the transmission of written advertisements soliciting remittances of money by mail for the purchase of a product called "Tigron," which was represented in the advertising as capable of inducing reactivation of lost sex energy, irrespective of age, and of overcoming sexual impotency in human beings when ingested in accordance with directions furnished by the advertiser. Based upon the statement of its composition as expressed on the label of the box containing Tigron tablets, a report from the Department of Health, Education and Welfare to the Post Office Department stated that none of the usual causes of human sexual impotency or diminution of sex energy could be overcome by the use of the Tigron formula.

Subsequently, on June 10, 1959, the individual plaintiff in this action identified himself pursuant to § 255, supra, which identification was accepted by the Department as compliance with this section.

Subsequently, upon motion of the General Counsel on June 15, 1959, the Judicial Officer on June 19, 1959, ordered that the interim impounding order of May 27, 1959 be extended and remain in force until the conclusion of the administrative proceedings instituted pursuant to § 259, supra, which upon Tigron's request had been adjourned from June 16 to July 8, 1959. On June 22, 1959, Tigron filed the complaint herein praying a preliminary and permanent injunction restraining the enforcement by the defendant postmaster of the impounding order of May 27 as extended on June 19. An order to show cause why such injunction should not issue was returned before this Court on June 25. An order has been signed releasing to Tigron all mail impounded prior to June 19, 1959, when the Department determined that the plaintiff had complied with the requirements of § 255. The question remains as to the validity of the extension of the interim mail impounding order until the completion of the administrative proceedings, pursuant to § 259.

Both parties concede that the authority, if any, for the interim impounding order is to be found in 39 U.S.C.A. § 259.[1]

---

1. This section in pertinent part provides: "The Postmaster General may, upon evidence satisfactory to him that * * * any person * * * is conducting any * * * scheme * * * for obtaining money * * * through the mails by means of false or fraudulent * * * representations, or promises, instruct postmasters at any post office at which registered * * * or any other letters or mail matter arrive directed to any such person * * * to return all such mail matter to the postmaster at the office at which it was originally mailed, with the word 'Fraudulent' plainly written or stamped upon the outside thereof; and all such mail matter so returned to such postmasters shall be by them returned to the writers thereof, under such regulations as the Postmaster General may

■ Preliminarily, it should be noted that the Postmaster General is not an indispensable party to this suit. Williams v. Fanning, 1947, 332 U.S. 490, 68 S.Ct. 188, 92 L.Ed. 95.

■ The object of the procedure authorized by § 259 is not punishment of the advertiser-solicitor, but prevention of future injury to the public. Donaldson v. Read Magazine, 1948, 333 U.S. 178, 68 S.Ct. 591, 92 L.Ed. 628. The Donaldson case further pointed out that the constitutionality of this section is well established. Id. at pages 189–191, 68 S.Ct. at pages 597–598.

It is Tigron's contention that, until the Departmental proceedings have resulted in a fraud order, no authority is explicit or implicit in § 259 giving the post office power to withhold mail from it and that such withholding in advance of administrative adjudication works a hardship, loss and punishment upon it. In support of this contention it relies inter alia upon the dicta expressed by Mr. Justice Douglas in Stanard v. Olesen, 1954, 74 S.Ct. 768, at page 770, 98 L.Ed. 1151, at pages 1152, 1153, as follows:

"In the present application petitioner complains only of the interim order under which her mail is being intercepted while the administrative proceeding is being conducted. She complains that the interim order was entered without notice, without a hearing, and without any authority in law, statutory or otherwise.

"The power of the Post Office Department to exclude material from the mails and to intercept mail addressed to a person or a business is a power that touches basic freedoms. It might even have the effect of a prior restraint on communication in violation of the First Amendment, or the infliction of punishment without due process of law which the Fifth and Sixth Amendments guarantee.

* * * Yet if this power exists, it is an implied one. For I find no statutory authority of the Post Office Department to impound mail without a hearing and before there has been any final determination of illegal activity. * * * There is something to be said on the side of the law enforcement officials. For if an illicit business can continue while the administrative hearings are under way, those who operate on a fly-by-night basis may be able to stay one jump ahead of the law. Yet it is for Congress, not the Courts, to write the law. Under the law, as presently written, every business, until found unlawful, has the right to be let alone. The Administrative Procedure Act, 60 Stat. 237, 5 U.S.C. § 1001 et seq., 5 U.S.C.A. § 1001 et seq., gives some protection to that right. The power of the Post Office Department to restrain the illegal use of the mails is subject to that Act." (Emphasis supplied.)

■ The Government argues that authority for the interim impounding order is implicit or ancillary to the power given to the Postmaster General by § 259, providing the Post Office Department immediately expedites the case and does everything within its power to render a prompt decision. Cf. Donnell Mfg. Co. v. Wyman, C.C.E.D.Mo.1907, 156 F. 415. It is clear in the present case that no delay in the prosecution of the administrative proceedings is chargeable to the Department. The Government cites Williams v. Petty, D.C.Okl.1953, 136 F.Supp. 283 and the dicta of Judge Sugarman in Barel v. Fiske, D.C.S.D.N.Y.1954, 136 F.Supp. 751 in support of this contention. However, until the proceedings have terminated in a fraud order no authority in the Postmaster General to direct the local postmaster to impound Tigron's mail can be constitutionally inferred from the language of § 259. While its object is the restitution of

prescribe. Nothing contained in this section shall be so construed as to authorize any postmaster or other person to open

any letter not addressed to himself.
* * * "

money remitted by reason of the allegedly fraudulent inducement of the advertisement, a determination of the fact of misrepresentation must first be made after opportunity is given Tigron to be heard, before the Department may exercise the power of enforcing such restitution. Cates v. Haderlein, 1951, 342 U.S. 804, 72 S.Ct. 47, 96 L.Ed. 609; Door v. Donaldson, 90 U.S.App.D.C. 188, 1952, 195 F.2d 764. It may well be that without an interim impounding of the mail, before such determination of fraud is made administratively, the fruits thereof will have been received and enjoyed by the advertiser who would thus escape the power of the Department to compel the restitution of the money to the victims. Nevertheless, the risk of such a consequence is inherent in the time required for due process. The impounding of mail prior to determination of fraud would involve the imposition of a penalty upon the addressee without an opportunity to be heard and an adjudication upon evidence. Such interim impounding would also effect a deprivation of property without just cause and without fair compensation. Assuming that some of the mail which is presently being impounded contains payments for merchandise ordered or sold from or by Tigron to persons induced by the advertising to make such payments, the deprivation of the use of the remittances in the mail addressed to Tigron would go uncompensated in the event that the administrative adjudication was favorable to it. To construe the statute as authorizing impounding of the mail prior to hearing and determination of fraud would render the section clearly unconstitutional. Jeffries v. Olesen, D.C.S.D.Cal. 1954, 121 F.Supp. 463.

One further point impels the Court to the conclusion that the Government's contention, that § 259 implicitly empowers the impounding herein before the administrative adjudication, is not well founded. On July 27, 1956 the Congress adopted what is now Title 39 U.S.C.A. §§ 259b and 259c. These new amendments dealt with mail containing obscene matter, the subject matter of 39 U.S.C.A. § 259a, which was enacted August 16, 1950. Thus under these amendments the Postmaster General was authorized to enter an interim order directing that mail addressed to any person appearing to be subject to the provisions of § 259a be held and detained by the postmaster at the post office of delivery for a period of twenty days from the effective date of such order. Section 259b(c) further provided that the action of the Postmaster General in issuing such an interim order was not subject to the requirements of the Administrative Procedure Act. S.Rep. No. 2234, 84th Cong., 2d Sess., U.S.Code, Cong. and Admin. News, Vol. II, 1956, pp. 3598–99 in commenting on these proposed amendments stated that the bill gave the "Postmaster General extraordinary and summary powers to impose a substantial penalty by impounding a person's mail for up to 20 days in advance of any hearing or any review by the courts. Such power is directly contrary to the letter and spirit of normal due process, as exemplified by the Administrative Procedure Act, which requires a hearing before any penalty may be imposed. The Post Office Department has made its case for this legislation on the grounds that a temporary and summary procedure is required to deal with fly-by-night operators using the mails *to defraud or to peddle pornography* who may go out of business— or change the name of their business or their business address—before normal legal procedures can be brought into operation. The Post Office Department has not recommended, nor does this committee approve, the use of the temporary impounding procedure under this bill as a substitute for the normal practice of an advance hearing or the bringing of an indictment for violation of the criminal code in all cases involving legitimate and well-established business operations." (Emphasis supplied.)

It will be noted that the legislation which became §§ 259b and 259c did not affect the provisions nor relate to the subject matter dealt with in § 259. This

in spite of the fact that the bill as proposed included authorization to the Postmaster General to impound mail which was used for schemes to defraud the public and for lotteries and chance drawings, dealt with in § 259 solely. U.S.Code, Cong. and Admin. News, supra, at p. 3598. Thus Congress apparently did not see fit to extend this "extraordinary and summary powers" to mail used for schemes to defraud and it is not for this Court to so extend the law.

The defendant is directed to release to Tigron the mail addressed to "Tigron Distributors," which the defendant has and may hereafter withhold until a fraud order shall have been issued by the Postmaster General, after hearing upon the administrative complaint in accordance with the provisions of the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq.

This opinion shall constitute my findings of fact and conclusions of law upon the plaintiff's application for preliminary injunction in this case, and an order in conformity with the views herein expressed will be signed upon presentation.