In the Matter of Pat R. KLEITZ, a/k/a Patricia R. Kleitz, Patricia Rose Kleitz, Pat R. Carrington, Patricia Rose Carrington, Patricia R. Hearne, Patricia Rose Hearne, Debtor.

Harold HOLLOWAY and Lois J. Benton, Plaintiffs,

v.

Pat R. KLEITZ, a/k/a Patricia R. Kleitz, Patricia Rose Kleitz, Pat R. Carrington, Patricia Rose Carrington, Patricia R. Hearne, Patricia Rose Hearne, Defendant.

Bankruptcy No. BK–LV–80–027. Adv. No. 800021.

United States Bankruptcy Court, D. Nevada.

Sept. 19, 1980.

John D. Nitz, of Nitz, Schofield & Nitz, Las Vegas, Nev., for plaintiffs.

C. A. Nelson, Las Vegas, Nev., for defendant.

## MEMORANDUM OPINION

LLOYD D. GEORGE, Chief Bankruptcy Judge.

By way of a Complaint filed the 4th day of March, 1980, the above–named Plaintiffs seek to have this Court determine them to be the owners of certain real property located at 3501 Victory Avenue in Clark County, Nevada. They further pray the Court for such injunctive relief as is necessary to cause a vacation of those premises by the Debtor–Defendant and to give them possession of the said real property. The Court finds the Plaintiffs' cause to be justified under principles of law and equity and will thus order the relief sought by their Complaint.

Although rather unusual, the facts underlying this proceeding are relatively undisputed. In August, 1977, Mrs. Pat R. Kleitz, then named Pat R. Carrington, purchased the subject property from a Mr. and Mrs. Paul Lewis. At that time, she assumed an existing First Deed of Trust on the property, in the name of Frontier Savings & Loan Association and in the amount of approximately $35,000. She also granted, on the purchase date, a Second Deed of Trust for approximately $21,000, naming Mr. and Mrs. Lewis as beneficiaries. Thereafter, Mrs. Kleitz maintained a somewhat spotty payment history on her second trust deed, which culminated on September 19, 1979 in a Notice of Breach and Default and Election to Sell being recorded by the Lewises against the Victory Avenue condominium.

Consequent to the filing of this notice of default, a sale was eventually scheduled for 11:00 a. m. on January 10, 1980 by Nevada Title Company, the Trustee of the property under the second trust deed. No inquiry has been actively pursued by counsel in this matter as to the propriety of the manner in which Nevada Title Company handled preliminary statutory procedures and the required advertising for this sale. The Court must assume that the sale was properly executed under Nevada law.

In anticipation of a sale of foreclosure on her condominium, Mrs. Kleitz seems to have begun contemplating bankruptcy in late 1979. Shortly before the above sale, a Mr. Hearne, Mrs. Kleitz' friend and ex–husband, went so far as to contact an attorney on her behalf to seek advice on matters relating to the Lewis' foreclosure and Mrs. Kleitz' possible recourse to the provisions of

the Bankruptcy Act. Still acting without benefit of counsel, however, Mrs. Kleitz filed a Declaration of Homestead on the Victory Avenue property on January 9, 1980. Then, at 11:15 a. m. on the morning of January 10, 1980, Mrs. Kleitz filed with this Court what she thought to be a completed petition under Chapter 7 of the Bankruptcy Reform Act of 1978. Nevertheless, upon examination by a deputy court clerk, it was discovered that Mrs. Kleitz had failed to include the initial page of her petition, with its standard allegations of qualification to file and residence and its verification of truthfulness and accuracy. Thereafter, a form copy of this first page was provided to Mrs. Kleitz by a deputy clerk of the Court, which she completed and filed with the rest of her petition at 11:40 a. m. that same day.

In the meantime, Shirley Ann Marvin, an employee of the Trustee, Nevada Title Company, who was conducting the foreclosure sale for the Lewises, had been calling the Court at regular intervals to verify whether any petition in bankruptcy had been filed on behalf of Mrs. Kleitz. At trial, Ms. Marvin testified that she had called the Court on several occasions between 10:45 a. m. and 11:03 a. m. and had been told by a court employee that no petition had been filed by the Debtor–Defendant.

Immediately after making her last call to the Court at 11:03 a. m., Ms. Marvin decided not to wait further, completing the sale at 11:10 a. m. Received in payment from the Plaintiffs on the sale were two cashier's checks drawn on Nevada Savings & Loan Association and First National Bank of Nevada in the total amount of $21,000.

Since the filing of Mrs. Kleitz' petition and the present Complaint, Mr. Richard A. Davis, the Trustee over the Debtor's estate has obtained an order of abandonment as to whatever interest the Debtor might have in the subject property under the reasoned belief that no non–exempt equity would remain in such to satisfy the claims of unsecured creditors.

Counsel for the Debtor–Defendant has raised one principal defense in avoidance of the Lewis' foreclosure sale. It is his position that even though Mrs. Kleitz clearly filed her petition after the sale meeting had been concluded, the automatic stay of acts "to create, perfect, or enforce any lien against property of the estate," found under 11 U.S.C. § 362(a)(4), should still have prevented the completion of the sale. Counsel's argument follows two main lines of reasoning. First, he maintains that one of the major changes worked by the Bankruptcy Reform Act of 1978 was to create an estate in bankruptcy "on the date of the filing of the petition," citing 11 U.S.C. § 541(a)(5) (1978). Aside from the noted statutory reference to the "date" of the filing of the bankruptcy petition, Counsel further refers to the 15th edition of Collier on Bankruptcy, which also talks in terms of the "date the case is commenced" and the "date upon which the petition is filed." 4 Collier on Bankruptcy § 541.04, at 541–21 through 541–22 (15th ed. 1979). From the use of the terminology "date," Counsel would argue that the estate is created as of the entire day upon which the petition is filed, rather than at any particular time during that day. A stay under Section 362(a)(4) of the Reform Act would therefore block any effort "to create, perfect, or enforce" a lien on property of an estate during the full 24–hour calendar period bearing the "date" of January 10, 1980.

■ The Court does not find the same significance in the language cited from either the Reform Act or the Collier explanation as does Counsel. To begin with, the use of the word "date" does not necessarily connote a selected 24–hour period. The word "date" is generically derived from the latin word "datum," or "given," rather than from the latin "dies" or "diem," meaning "day." H. Black, Black's Law Dictionary 356, 409 (5th ed. 1979). "Date" can thus be seen as referring to any increment of time "given" in regard to an act or sequence of acts, the occurrence of which has legal significance. Moreover, nothing in the legislative history of the Reform Act indicates that Congress intended that the automatic

stay provisions of Section 362(a) should affect acts done at any time prior to the actual filing of the bankruptcy petition. Rather, the filing of the petition, which serves to commence a debtor's case, appears to be the focal point for determining the effectiveness of the stay and the parameters of the estate. 11 U.S.C. § 541(d) (1978) (dealing with interest held by debtor "as of the commencement of the case" in mortgaged real property). Anything occurring prior to that particular point in time should have been addressed by something in the nature of restitutionary language, as is used in the avoidance of preferences or fraudulent conveyances. The Court finds no such wording or intent in the automatic stay provisions of the 1978 Reform Act or in the various treatise sections referred to by counsel.

Citing sources apart from the Bankruptcy Reform Act, see 74 Am.Jur.2d, *Time* §§ 13–14, at 595–97 (1974), 86 C.J.S., Time § 16, at 900–04 (1954), some reference has also been made to the general principle that the law will recognize no fractions of a day in the making of determinations as to time. The Court finds that this rule of law, like many, has been "swallowed" by its exceptions. A number of courts, particularly in the bankruptcy setting, have not hesitated in the least to entertain evidence as to the timing of events in increments of less than a day when such has been necessary to ascertain the moment at which conflicting rights actually became vested. *See, e. g., In re Gubelman*, 10 F.2d 926 (2d Cir. 1925), *mod. on other grounds sub nom. Latzko v. Equitable Trust Co.*, 275 U.S. 254, 48 S.Ct. 60, 72 L.Ed. 267 (1927); *In re Dejay Stores, Inc.*, 220 F.Supp. 497 (S.D.N.Y.1963); *In re Susquehanna Chemical Corp.*, 81 F.Supp. 1 (W.D.Pa.1948), *aff'd sub nom. Susquehanna Chemical Corp. v. Producers Bank & Trust Co.*, 174 F. 783 (3d Cir. 1949); *In re Ledbetter*, 267 F. 893 (N.D.Ga.1920).

Given the apparent fairness of the Lewises sale, the good faith shown by the Plaintiffs in making their bid, and the consummate care taken by Ms. Marvin to avoid a conflict with the jurisdiction and equitable powers of this Court, any resort at this time to the indivisible day principle would not only be unjust, but would encourage an attitude of studied disregard for imminent foreclosure sales and, in the long run inactivity in the bidding which is to take place at such sales. Furthermore, the Court perceives that Mrs. Kleitz was given a more than adequate opportunity to redeem her property and that she is still incapable of paying even the current amounts coming due each month under the two trust deeds. Also, a significant divergence of opinion exists as to the actual value of the equity interest which the Debtor seeks to protect. The Court finds itself believing those who would greatly reduce this hypothetical sum because of the repairs which Mrs. Kleitz, herself, has admitted that she cannot make prior to any future sale.

Finally, the Court notes that the Debtor's interest, if any, in the Victory Avenue property is no longer under its direct supervision because of its order of abandonment. Although this abandonment no longer has the effect of divesting this Court of jurisdiction to hear questions relating to the Debtor's rights in such real property, *see generally* 28 U.S.C. § 1471 (1978), or of invalidating the automatic stay of acts to enforce liens on pre–petition claims against that property, *see* 11 U.S.C. § 362(a)(5) (1978), 2 Collier on Bankruptcy ¶ 362.04[5], at 362–34 (15th ed. 1979), it does suggest a paucity of reasons why the Lewises should not be permitted to foreclose under their deed of trust, even if this bankruptcy court were to find the initial sale to have been ineffective. In this regard, some suggestion has been made by Debtor's Counsel that Mrs. Kleitz will soon be converting her Chapter 7 case to a case under Chapter 13, which would be geared toward a rearrangement of both her secured and unsecured obligations. No such petition has been forthcoming, however, and the Court finds no legal, equitable, or practical reason why the initial sale of the Lewises should be set aside or rendered void to accommodate the uncertain hopes and plans of this Debtor.

Taking his second line of attack, Debtor's Counsel further argues that even if the

Court is willing to take a closer look at the timing of the significant events in this case, the sale was not completed, under law, until after the cashiers' checks rendered in payment by the Plaintiffs were actually converted to federal reserve notes and coins at the drawing bank and savings and loan association. The Court does not find this to be a tenable position. Certainly, a sale is not complete until a tender of payment has been made in accordance with the terms of the deed of trust, statutory law, and published notices. *See generally* 59 C.J.S., *Mortgages* § 579, at 982 (1949). And, the terms of this sale did apparently call for a sale "[at public auction to highest bidder for cash] (payable at time of sale in lawful money of the United States)." Nevertheless, this Court does not accept Counsel's restrictive reading of the word "cash." With respect to a sale of land under a writ of fieri facias, for example, the Maryland Court of Appeals has stated:

> "When the published terms of sale provide, as in the case at bar, for a sale "to the highest bidder for cash" the sheriff may not vary the terms of sale by accepting anything else. The term "cash", as used here, excludes checks, drafts and negotiable instruments in any other form. It means United States currency. Certified checks, bank drafts and cashier's checks may, in appropriate circumstances, constitute an exception when drawn upon or issued by banks the existence and solvency of which are well known to the sheriff. See *Kleckner v. Bank of America Nat. Trust & Savings Ass'n*, 97 Cal. App.2d 30, 217 P.2d 28 (1950); *Eastman v. Melville Land Co.*, 142 La. 610, 77 So. 475 (1918); *Rowe v. Granger*, 118 App. Div. 459, 103 N.Y.S. 439 (1907); Annot., *Propriety of accepting check or promissory note in satisfaction of bid at execution or judicial sale had for cash*, 86 A.L.R.2d 292 (1962); 2 Freeman, Executions, § 293a (3rd Ed. 1900); Rorer, Judicial Sales, § 729 (2nd Ed. 1878); 33 C.J.S. Executions §§ 216–217 (1942); 21 Am. Jur., Executions, §§ 228–30 (1939). But see *First Federal Savings & Loan Ass'n of Dallas v. Sharp*, 359 S.W.2d 902 (Texas 1962), discussed in 23 Md.L.Rev. 373 (1963)."

*Buckeye Development Corp. v. Brown & Shilling, Inc.*, 243 Md. 224, 220 A.2d 922, 925 (1966). *See also Good Fund, Ltd.–1972 v. Church*, 579 P.2d 1174 (Colo.App.1978).

■ Inasmuch as no evidence has been presented in these proceedings to indicate that either of the institutions which drew these cashiers' checks was insolvent at the time of this sale, or became so shortly after the sale, the Court finds payment on this sale to have been completed at the time the checks were tendered over to Ms. Marvin. At that point, both legal and equitable title to the subject property was transferred to the Plaintiffs and out from under the automatic stay wrought by the later filing of the Debtor's petition. And, any acts done thereafter in ultimate collection on these checks must be considered to have been done as an enforcement of obligations between persons quite apart from the Debtor and such were thus not subject to the equitable jurisdiction of this Court.

■ This sale having been completed prior to the filing of Mrs. Kleitz' petition, the Court must find ownership of legal and equitable title to the Victory Avenue property to be in the Plaintiffs, except as limited by the First Deed of Trust of Frontier Savings & Loan Association. And, acting pursuant to its general equitable powers, see 28 U.S.C. § 1481 (1978), the Court will order the Debtor to vacate these premises on or before such a date as shall hereafter appear appropriate.