In re ENERGY COOPERATIVE
INC., Debtor.

ENERGY COOPERATIVE INC.,
Plaintiff,

v.

MURPHY OIL COMPANY, Defendant.

ENERGY COOPERATIVE, INC.,
Plaintiff,

v.

TESORO PETROLEUM CORPORATION,
Defendant.

Bankruptcy No. 81 B 05811.
Adv. Nos. 82 A 2097, 82 A 1656.

United States Bankruptcy Court,
N.D. Illinois, E.D.

Sept. 7, 1983.

Allan Sweig, Nachman Munitz & Sweig Ltd., Chicago, Ill., for plaintiff.

Michael Rosenthal, Rosenthal & Assoc., Chicago, Ill., for Tesoro Petroleum Corp.

Joseph Kadison, Kamenear, Kadison & Anderson, Chicago, Ill., for Murphy Oil.

## MEMORANDUM OPINION

FREDERICK J. HERTZ, Bankruptcy Judge.

### I.

The issue presented in each case before this court involves the question of whether fractions of a day are to be considered under the set-off provisions of Section 553 of the Bankruptcy Code. 11 U.S.C. § 553 (Supp. V 1981). In that the same legal issue is presented in each instance, this court will consolidate the two cases to further judicial economy. Where there are relevant factual distinctions, this court will address each case separately.

### II.

### FACTS

Energy Cooperative Incorporated (hereinafter referred to as "ECI") is a Delaware corporation authorized to do business in Illinois. ECI's main office was located in Rosemont, Illinois. ECI's operations principally consisted of the purchasing, selling, storing and refining of various petroleum products. A significant portion of ECI's business emanated from a refinery located in East Chicago, Indiana.

As a result of the declining demand for oil, an over-abundance of oil refining capacity became available. This turn of events affected ECI's operations to such a degree that eventually ECI had to seek relief under Chapter 11 of the Bankruptcy Code. The petition for reorganization was filed on May 15, 1981, at 12:01 p.m. (Chicago time). Since the petition was filed, ECI has scaled its operations down to a point where today, for all practical purposes, it is no longer actively conducting business at the refinery.

While ECI was actively engaged in business, it entered into exchange agreements with various suppliers, distributors and refineries involved in the energy industry. A typical exchange agreement provided that the contracting parties would agree to the loan or exchange of certain petroleum products. The nature of the exchange agreements necessarily meant that the account balances between the contracting parties would fluctuate in relation to the value of the respective products delivered.

The cases presently before this court involve two defendants; Murphy Oil Company (hereinafter referred to as Murphy) and the Tesoro Petroleum Corporation (hereinafter referred to as Tesoro). Each defendant entered into an exchange agreement with ECI for the loan or exchange of certain petroleum products, primarily involving the exchange of gasoline.

The uncontested facts indicate that ECI was indebted to both Murphy and Tesoro for deliveries of petroleum products made to ECI prior to May 15, 1981.[1] It is similarly uncontested that ECI delivered gasoline to both Murphy and Tesoro on the day the ECI Chapter 11 petition was filed, (May 15, 1981). On May 15, 1981, Murphy received 419,748 gallons of gasoline having a value of $429,717.02 from ECI. The Murphy deliveries were all made prior to 12:01 p.m., which was the time that ECI filed its petition. Tesoro received 118,136 gallons of gasoline having a value of $118,499.95 from ECI on May 15, 1981. However, the documents possessed by this court do not reflect at what time the Tesoro deliveries were made.

ECI brought separate actions against Murphy and Tesoro seeking to recover the value of the shipments made on May 15, 1981. The basis of each action brought by ECI rests on the principle that the May 15 shipments represented post-petition transactions. Implicit in ECI's argument is the conclusion that fractions of a day must be disregarded. This conclusion, ECI argues, would defeat each defendant's affirmative claim for setoff against ECI's pre-petition debts. Specifically, ECI contends that nei-

1. Murphy alleges the ECI indebtedness to be $1,836,355.00. Tesoro alleges the ECI indebtedness to be $567,467.83.

ther Murphy nor Tesoro would be able to satisfy the requisite element of mutuality which must be proven by a creditor in order to setoff a debt under the provisions of Section 553.

Following each defendant's answer to the ECI complaints, ECI brought separate motions urging this court to render a judgment on the pleadings. The defendants, in turn, requested dismissal of the ECI complaints. Each defendant also brought an affirmative claim for setoff. The relevant material facts do not appear to be in dispute, and thus this court is left with the issue of determining the applicability of Section 553 to each case.

## III.

## DISCUSSION

Section 553 provides in relevant part that:

(a) Except as otherwise provided in this section ... (the exceptions not being applicable to this proceeding) ...., this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, ....

11 U.S.C. 553 (Supp. V 1981). The right of set-off provided for in Section 553 is derived from Section 68 of the old Bankruptcy Act. 11 U.S.C. 108 (1976), *repealed by* Bankruptcy Reform Act (November 6, 1978).

■ The right of set-off is based upon the right of mutual debtors. Otherwise, all attempts to offset a mutual debt and claim between the estate and a creditor would amount to a preference under 11 U.S.C. § 547 (Supp. V 1981). *See 4 Colliers on Bankruptcy* ¶ 553.02, at 553–10 (15th edition 1983) (the Code provides for a limited right of set-off to remedy injustices that would result if creditors were forced to pay an estate's claim in full before recovering any dividend for claims filed against the estate). Accordingly, Section 553 somewhat restricts the right of set-off formerly provided under Section 68 by treating its exercise as a

preference only under certain limited circumstances.

■ In order to exercise the set-off privileges provided for in Section 553, a creditor must prove that there is mutuality between the claim it has against the estate and the debt sought to be set-off. *See In re Wilson,* 29 B.R. 54, 56 (Bkrtcy.W.D.Ark. 1982) (mutuality is one of the touchstones of permissive set-off under Section 553 of the Code); *In re Shoppers Paradise Inc.,* 8 B.R. 271, 277–278 (Bkrtcy.S.D.N.Y.1981) (Under Section 553, it is not required that the debt and the claim be of the same character. They may arise from different transactions as long as there is a mutuality of obligations). The mutuality requirement can be satisfied by off-setting either pre-petition obligations or by off-setting post-petition obligations. However, one can not set-off a post-petition obligation against a pre-petition obligation (or vice-versa). *See In re Dartmouth House Nursing Home, Inc.,* 24 B.R. 256, 263 (Bkrtcy.D.Mass.1982) (The *Dartmouth* court rejected a creditor's attempt to set-off a credit owed to a Chapter 11 debtor to satisfy a pre-filing debt. The court held that since the debtor and debtor-in-possession were two different entities, the mutuality element required under Section 553 was lacking); *See also* Ahart, *Bankruptcy Setoff Under the Bankruptcy Reform Act of 1978,* 53 Amer.Bankr.L.J. 205, 216 (1979).

Turning to the cases at hand, the evidence reflects that both Murphy and Tesoro have filed claims against the ECI estate. The evidence also indicates that the deliveries made by ECI to each defendant on May 15, 1981, were made pursuant to the same exchange agreements under which the Murphy and Tesoro claims arose. It then remains for this court to determine whether the May 15th deliveries constituted post-petition activity, pre-petition activity, or a combination of both. In order to answer this question, this court must determine whether fractions of a day should be considered when computing a creditor's right to set-off under Section 553.

Generally, the law rejects fractions of a day in order to avoid disputes. *Louisville v.*

*Portsmouth Savings Bank,* 104 U.S. 469, 474–475, 26 L.Ed. 775 (1881). However, as recognized recently by the Supreme Court, the general rule rejecting fractions of a day is fraught with many exceptions. *See U.S. v. Will,* 449 U.S. 200, 225 n. 29, 101 S.Ct. 471, 485 n. 29, 66 L.Ed.2d 392 (1980), *citing Louisville,* 104 U.S. at 474–475 ("Whenever it becomes important to the ends of justice, or in order to decide upon conflicting interests, the law will look into fractions of a day as readily, as into fractions of any other time. The rule is purely one of convenience, which must give way whenever the rights of the parties require it."); *See also National Bank v. Burkhardt,* 100 U.S. 686, 689, 25 L.Ed. 766 (1879) ("when the priority of one legal right over another, depending upon the order of events occurring on the same day, is involved, [the] rule [that a day is an indivisible unit of time.] is necessarily departed from.").

This court has carefully reviewed the post-Act case law reflecting upon the fractions of a day issue. Upon such review, it is unequivocally clear to this court that fractions of a day should be considered when adjusting the rights of a debtor and its creditors in the bankruptcy context. *See Matter of Holiday Meat Packing, Inc.,* 30 B.R. 737, 740 (Bkrtcy.W.D.Pa.1983) (The *Holiday* court denied a creditor's motion to treat a portion of a claim as one having administrative priority. The creditor had delivered beef products to the debtor 2½ hours before the debtor filed a Chapter 11 petition. In reaching its conclusion, the *Holiday* court implicitly recognized the principle that fractions of a day should be considered in determining a creditor's rights against a debtor); *In re Monzon,* 27 B.R. 50, 51 (Bkrtcy.S.D.Fla.1983) (fractions of a day are to be scrupulously observed in determining the claims of rival creditors and in related matters pertaining to debtor-creditor relationships); *Matter of Kleitz,* 6 B.R. 214, 216–217 (Bkrtcy.D.Nev.1980) (courts have not hesitated in the least, to entertain evidence as to the timing of events in increments of less than a day, when necessary to determine the moment at which conflicting rights have vested).

Consequently, this court concludes that it must necessarily consider the timing of the relevant events in question to reach an ultimate conclusion. *See 4 Colliers on Bankruptcy,* ¶ 553.15(4), at 553.70–553.72 (15th edition 1983) (Where transactions are in dispute, and only one day is involved, actual priority in time should be taken into account). *Colliers* suggests the point of cleavage should be the time at which the bankruptcy petition was filed. *Id.* at ¶ 553.15, at 553–70. This position has been followed by several bankruptcy courts that have addressed the issue. *See In re All-Brite Sign Service Co., Inc.,* 11 B.R. 409, 411 (Bkrtcy.W.D.Ky.1981) (the filing of the petition marks the time at which mutuality ceases in construing whether a creditor has a right of set-off); *Matter of Kleitz,* 6 B.R. at 216–217 (relevant time for determining whether an asset is property of the estate is the time when the petition was filed).

Turning to the present cases, the evidence indicates that the ECI petition was filed at 12:01 p.m. (Chicago time). The uncontested facts indicate that the ECI deliveries made to Murphy on May 15th were made prior to 12:01. Consequently, the deliveries represented pre-petition obligations which Murphy can set-off against the pre-petition claim it has filed against ECI. The value of the deliveries made on May 15th is represented by both parties (i.e. Murphy and ECI) to be $429,717.02.

As to Tesoro, the documents possessed by this court do not clearly reflect at what time (on May 15, 1981) the ECI deliveries were made. Consequently, this court holds that Tesoro and ECI are to conduct further discovery to determine the sequence of the events that took place on May 15th. The value of the gasoline delivered by ECI to Tesoro prior to 12:01 represents pre-petition obligations which Tesoro can set-off against the pre-petition claim it has filed against ECI. *See In re Shoppers Paradise, Inc.,* 8 B.R. 271, 278 (Bkrtcy.S.D.N.Y.1980) (set-off is limited to funds available at the time of the petition; not amounts available subsequently).

The value of the gasoline found to be delivered by ECI to Tesoro subsequent to

12:01 represents post-petition obligations which can not be set-off by Tesoro against the pre-petition claim it has filed against ECI. This opinion only considers the fraction of a day issue. In that Tesoro raised other affirmative defenses to ECI's complaint, the parties are to schedule future hearings to resolve the remaining issues.

In reaching its conclusion, this court carefully reviewed the propositions of law raised by ECI. ECI relied to an important extent upon *In re Susquehanna Chemical Corp.,* 81 F.Supp. 1 (W.D.Pa., 1948), *aff'd. sub. nom., In re Susquehanna Chemical Corp. v. Producers Bank & Trust Co.,* 174 F.2d 784 (3rd Cir., 1949). In *Susquehanna,* the court refused to consider fractions of a day and accordingly denied a bank's petition to set off certain deposits made by a debtor on the day the debtor's bankruptcy petition was filed. The *Susquehanna* court reached its decision, in part, by finding that the debtor's efforts to reorganize would be substantially hindered if the bank's petition for set-off was allowed.

This court finds *Susquehanna* to be factually distinguishable from the present cases before this court. First, *Susquehanna* was an Act case. Each case before this court is controlled by the Code. Although the basic right to set-off is similar under both laws, nonetheless, a review of the relevant Code law clearly indicates that fractions of a day are to be considered. The relevant Act case law did not necessarily indicate such a clear conclusion.

Second, in *Susquehanna,* there was no record of the time sequence at which the various events in issue took place. Here, the sequence of events is clearly recorded in documents reflecting the time at which each event occurred. Thus, this court has the necessary information to reach a more informed and equitable resolution of the issues than could the *Susquehanna* court.

■ Third, the *Susquehanna* court found that the funds in question were necessary for the successful reorganization of the debtor. This court recognizes that it has the discretion to deny a creditor's petition for set-off. *See In re Dartmouth House Nursing Home, Inc.,* 24 B.R. 256, 265 (Bkrtcy.D.Mass., 1982) (The Bankruptcy Court has the discretion to invalidate the privilege of set-off where set-off would frustrate a Chapter 11 debtor's ability to reorganize); *In re Princess Baking Co.,* 5 B.R. 587, 589–590 (Bkrtcy.S.D.Cal., 1980) (the court distinguishes between the right of set-off as embodied under the Act and that as embodied under the Code).[2]

■ Since the right of set-off is contingent upon the bankruptcy court's approval, this court must examine to what extent the debtor's reorganization efforts will be hindered if the respective claims for set-off are approved. A review of the status of the ECI proceeding indicates that the refinery, from which a principal portion of the debtor's business formerly emanated, has been completely shut down. Furthermore, debtor's counsel indicated in their pleadings that were the complaints to recover the accounts receivables result in a successful conclusion, the proceeds would inure to the benefit of all the creditors of the estate. Thus, it is clear that the present situation does not reflect an instance where a debtor's reorganization efforts would be hindered. Accordingly, in that this proceeding is akin to that of a gradual liquidation, this court will not exercise the discretionary authority that it possesses to invalidate the set-offs in question.

## IV.

### CONCLUSION

In summation, this court grants the Murphy motion to dismiss the ECI complaint (No. 82 A 2097). Furthermore, this court finds that Murphy has the right to set-off $429,717.02 against the pre-petition claim it has filed against ECI. Implicit in this court's conclusion is the opinion that the

---

2. *See also* H.Rep. No. 595, 95th Sess. (1977), *reprinted in* (1978) U.S.Code Cong. & Ad.News, pp. 5787, 6144: "... Treatment of setoff in a reorganization case is very different than in a liquidation case. In order to accomplish a successful reorganization, it is important that business proceed as usual for the debtor. Set-off is an interruption in the conduct of the business and may have detrimental effects on the attempted reorganization."

time that ECI filed its Chapter 11 petition (12:01 p.m.), represented the cleavage point for determining whether a transaction was of the post or pre-petition nature for purposes of computing set-off.

Tesoro and ECI are to engage in further discovery to determine the time and value of the gasoline deliveries made by ECI on May 15, 1981. The value of the gasoline found to be delivered to Tesoro prior to 12:01 constitutes a pre-petition obligation which Tesoro can set-off against the pre-petition claim it filed against ECI. All further matters raised in the Tesoro proceeding are to be continued to a future date to be set by the parties (No. 82 A 1656).

Counsel for both Murphy and Tesoro are to file draft orders in accordance with the respective portions of this opinion within five days.